[No. E009028. Fourth Dist., Div. Two. Nov. 17, 1992.]

BETHSAIDA ARRIAGA, Plaintiff and Appellant, v.
LOMA LINDA UNIVERSITY, Defendant and Respondent.

**COUNSEL**

Timothy L. Taggart for Plaintiff and Appellant.

Clayson, Mann, Arend & Yaeger, Kent A. Hansen, Roland C. Bainer, Proskauer, Rose, Goetz & Mendelsohn, Jeffrey A. Berman, Steven G. Drapkin and Joseph B. Scudiero for Defendant and Respondent.

**OPINION**

**DABNEY, Acting P. J.**—Plaintiff Bethsaida Arriaga appeals from a judgment in favor of defendant Loma Linda University (the University) on her complaint for discrimination based on sex, marital status, and pregnancy. Arriaga contends that (1) a triable issue of material fact existed as to whether the University received funding from the state and had therefore lost its exemption as a nonprofit religious corporation under the California Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq.;[1] and (2) she had the right to assert a private action under section 11135. We conclude the University was excluded under the FEHA regardless of whether it received state funding. We also conclude that section 11135 does not provide the right to a private action.[2]

### FACTS

In December 1984, Arriaga was hired by the University as a media technician for the University's Del E. Webb Memorial Library (Library). The University, organized as a nonprofit religious corporation under California laws, is part of the Seventh Day Adventist Church (Church).

The University informed all its employees that their failure to comport themselves in a manner consistent with the tenets of the Church would lead

---

[1]All further statutory references are to the Government Code unless otherwise indicated.

[2]The University has requested that we take judicial notice of a memorandum of the Department of Fair Employment and Housing (Department). We conclude that the memorandum would not be helpful to the determination of the issues in this appeal, and we decline to take judicial notice.

to discipline, including termination. The Church disapproves of sexual inter-course outside of marriage. Arriaga, who is unmarried, became pregnant. On July 22, 1986, the University informed Arriaga in writing that it was terminating her employment because she was engaging in extramarital sex, and her behavior was unacceptable to the Church.

Arriaga filed a complaint with the Department against the University alleging discrimination on the basis of marital status, sex and pregnancy. The Department declined to pursue the matter.

Arriaga then filed a first amended complaint (hereafter, complaint) against the University alleging discrimination on the basis of marital status, sex and pregnancy; wrongful discharge; breach of the implied covenant of good faith and fair dealing; breach of contract; breach of public policy; intentional and negligent infliction of emotional distress; and defamation. The University demurred to the complaint, and the trial court sustained the demurrer with leave to amend as to the causes of action for breach of public policy and defamation. Arriaga did not further amend the complaint.

Arriaga moved for summary judgment or summary adjudication on her complaint. The court denied the motion.

The University moved for summary adjudication on Arriaga's causes of action for discrimination and for breach of the implied covenant of good faith and fair dealing. The court granted the motion as to the latter and denied the motion as to the former.

The University moved for reconsideration. The court continued the motion to allow Arriaga to conduct discovery on whether the University had re-ceived any state funding during Arriaga's employment. The court determined it was undisputed that the University is a nonprofit religious corporation and therefore was not an employer under FEHA. Finally, the court determined it was undisputed that the Library received no public funds; therefore, section 11135 did not give Arriaga any cause of action against the University. The court granted the University's motion for summary adjudication on the first cause of action. ■■■ ■ ■ The court ordered, "[T]he Court hereby dismisses Arriaga's First Cause of Action for employment discrimination, in its entirety, with prejudice, . . ."[3]

---

[3]Technically, the court erred in dismissing the first cause of action in its entirety because an issue raised by the pleadings remained unresolved. Arriaga alleged that her cause of action for discrimination arose under article I, section 8 of the California Constitution, as well as under the FEHA and section 11135. The California Supreme Court has recognized that article I,

Pursuant to a stipulation, Arriaga dismissed her remaining causes of action, and a final judgment was entered.[4]

DISCUSSION

*Standard of Review.*

■ A motion for summary judgment or summary adjudication raises only questions of law concerning the construction and effect of supporting and opposing papers. Thus, we independently review such motions on appeal, and we apply the same three-step analysis as does the trial court. ■ First, we identify the issues framed by the pleadings. Second, we determine whether the moving party has established facts that negate the opposing party's claims and justify a judgment in the moving party's favor. Third, if the moving party has made a prima facie showing justifying a judgment, we determine whether the opposing party has demonstrated the existence of a triable issue of material fact. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].) We construe the affidavits of the moving party strictly and those of the opposing party liberally. We resolve any doubts as to the propriety of granting the motion in favor of the opposing party. (*Durbin* v. *Fletcher* (1985) 165 Cal.App.3d 334, 341 [211 Cal.Rptr. 483].)

*University's Exemption From the FEHA.*

Under the FEHA, "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: [¶] (a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, or sex of any person, . . . to bar or to discharge the person from employment . . . ." (§ 12940.)

The FEHA defines an employer as follows: " 'Employer,' except as here-inafter provided, includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly; the state or any political or civil subdivision thereof and cities. [¶] *'Employer' does not include a religious association or corporation not organized for private profit.*" (§ 12926, subd. (c), italics added.)

---

section 8 may provide the basis for a cause of action for wrongful termination based on discrimination in employment on account of sex. (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 89-91 [276 Cal.Rptr. 130, 801 P.2d 373].)

The University's motion for summary adjudication did not address this theory, and Arriaga did not raise it in her opposition to the motion. Likewise, Arriaga has not raised the issue on appeal. The issue is therefore deemed abandoned. (*Bank of America* v. *Frost* (1962) 205 Cal.App.2d 614 [23 Cal.Rptr. 441].)

[4]In her complaint, Arriaga named two individuals, John Morovati and H. Maynard Lowry, as defendants. She did not name those individuals in her notice of appeal, and we deem the appeal waived as to them.

Arriaga does not dispute that the University was organized as a nonprofit religious corporation under California laws. As such, it was excluded from coverage under FEHA. (§ 12926, subd. (c).) ▉ However, Arriaga asserts that a triable issue of material fact existed as to whether the University received state funds and consequently lost its exemption under FEHA. As authority for this proposition, Arriaga relies on section 11135, which states "No person in the State of California shall, on the basis of ethnic group identification, religion, age, sex, color, or physical or mental disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."

Section 11135 does not affect the University's status under the FEHA. Section 11135 is not part of the FEHA, but was designed as an *independent* source of protection for persons who are discriminated against in state-funded programs and activities.

In contrast, an exclusion from FEHA coverage for a nonprofit religious corporation does not hinge upon whether the corporation received state funds. Rather, the statute explicitly excludes such a corporation from its definition of an employer. (*Rojo, supra,* 52 Cal.3d at p. 80.) The trial court's ruling regarding the FEHA claims is affirmed.

*Private Right of Action Under Section 11135.*

Arriaga next argues that even if the University is exempt from the FEHA, she has a private right of action under section 11135. The University contends that no private right of action exists to enforce the provisions of section 11135. The trial court concluded that a private right of action did exist under section 11135, but that it was undisputed that the University received no funding from the state during the period of Arriaga's employment.[5]

California courts have not addressed whether section 11135 provides a private right of action. However, in *Greater Los Angeles Council on Deafness*

---

[5]We wish to emphasize the narrowness of the issue before us. As noted in footnote 3, Arriaga has abandoned any contention of error concerning the dismissal of her action based on article I, section 8 of the California Constitution. Moreover, as the California Supreme Court in *Rojo, supra,* instructed, ". . . the common law of this state provides any number of remedial theories to compensate for injuries 'relating to discrimination' [citation]." (*Rojo, supra,* 52 Cal.3d at p. 74.) The *Rojo* court reiterated, " 'A responsible attorney handling an employment discrimination case must plead a variety of statutory tort and contract causes of action in order to fully protect the interests of his or her client.' " (*Ibid.,* italics omitted.)

Arriaga has chosen to base her appeal solely on her assertion of a private right of action under section 11135. Consequently, we limit our discussion to this single issue. We do not mean to imply either that all other possible theories for recovery were foreclosed or that Arriaga was free to pursue other such theories. Those matters are not before us based on the limited issue presented in the briefs.

v. *Zolin* (9th Cir. 1987) 812 F.2d 1103 (hereafter, *GLAD*), the federal court considered whether a plaintiff had a private right of action under section 11135. The court observed that the language of section 11135 is similar to that of section 504 of the Rehabilitation Act, title 29 United State Code section 794,[6] and courts have held that that section establishes a private right of action. (*GLAD, supra,* at pp. 1113-1114.) However, the federal Rehabilitation Act does not include any administrative remedies.

The *GLAD* court noted that section 11139 mandates liberal construction of the Code's civil rights provisions. (*GLAD, supra,* 812 F.2d at p. 1114.) Although the Legislature has created an administrative remedy under section 11136[7] to enforce the provisions of section 11135, section 11136 "is not written in mandatory or exclusive terms." (*Ibid.*) Thus, the *GLAD* court "[did] not read it as precluding a private judicial remedy. [Citation.] Nor does the fact that the California legislature expressly provided for private rights of action in certain articles of its Government Code necessarily indicate a legislative intent to preclude private actions to vindicate rights granted by other parts of the Code." (*Ibid.*)

We disagree with the *GLAD* court's conclusion that section 11135 creates a private right of action. We believe the federal court's analysis is inconsistent with the legislative history of section 11135. The Staff Analysis of Assembly Bill No. 803 states: "Under current law and executive orders, all state agencies and entities receiving state funds are prohibited from engaging in employment discrimination in providing services. However, *if an individual feels he or she has been discriminated against, they must go to court as individuals alleging discrimination under the United States Civil Rights Act.*

"On the basis of applicable law and court decisions, each state agency under this measure would adopt such rules and regulations as it deemed

---

[6]Section 504 of the Rehabilitation Act provides, "No otherwise qualified individual with handicaps in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." (29 U.S.C. § 794.)

[7]Section 11136 provides, "Whenever a state agency that administers a program or activity that is funded directly by the state or receives any financial assistance from the state, has reasonable cause to believe that a contractor, grantee, or local agency has violated the provisions of Section 11135, or any regulation adopted to implement such section, the head of the state agency shall notify the contractor, grantee, or local agency of such violation and shall, after considering all relevant evidence, determine whether there is probable cause to believe that a violation of the provisions of Section 11135, or any regulation adopted to implement such section, has occurred. In the event that it is determined that there is probable cause to believe that the provisions of Section 11135, or any regulation adopted to implement such section, have been violated, the head of the state agency shall cause to be instituted a hearing . . . to determine whether a violation has occurred."

necessary to define unlawful discrimination within the context of the programs and activities operated by the agency. *From that point on, the agency would become primarily responsible for non-discriminority [sic] policies and this would lessen the need for individuals to seek a judicial remedy of their own.*

*"The major intent of this measure is to shift the burden of proving unlawful discrimination in a state-funded program from the person being discriminated against to the state agency administering the program."* (Sen. Com. on Gov. Organization, Staff Analysis of Assem. Bill No. 803 (1977-1978 Reg. Sess.) as amended June 21, 1977, italics added.)

This legislative history recognized that private civil rights actions already existed under other provisions of law. The legislative history also indicated that section 11135 was enacted to provide an administrative *alternative* to private lawsuits.

Moreover, in the same year as section 11135 was enacted, the Legislature created an express private cause of action under the Fair Employment Practice Act (FEPA), the predecessor to FEHA. (Stats. 1977, ch. 1188, §§ 18-37, pp. 3906-3912.) Before that, enforcement of FEPA had been exclusively administrative, and courts were involved only with mandamus actions. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1398 & fn. 22 [241 Cal.Rptr. 67, 743 P.2d 1323]; *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 215 [185 Cal.Rptr. 270, 649 P.2d 912].)[8] Had the Legislature intended to create a similar private cause of action for damages under section 11135, it could have done so. It did not.

In *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], the Supreme Court addressed the circumstances under which a private right of action could be implied from a legislative enactment. The court ruled that Insurance Code section 790.03 did not give rise to an implied cause of action for a third party against an insurer based on the insurer's refusal to settle a claim promptly and fairly. The court noted that the statute created a detailed *"administrative* enforcement" scheme requiring the Insurance Commissioner to enforce its provisions. (46 Cal.3d at p. 300.) The court reasoned, "The fact that neither the Legislative Analyst nor the Legislative Counsel observed that the new act

---

[8]The regulations adopted to implement section 11135 provide, similarly to the predecessor statute to the FEHA, "Except as provided in Section 98003, nothing in this Division shall be construed to preclude or restrict a person from judicially enforcing rights accruing under this Division pursuant to California Code of Civil Procedure section 1094.5." (Cal. Code Regs., tit. 22, § 98003.)

created a private right of action is a strong indication the Legislature never intended to create such a right of action. [Citations.]" (*Ibid.*)

Here, as in *Moradi-Shalal*, the Legislature created a comprehensive administrative scheme to enforce section 11135. Section 11138 directs each state agency that administers state funds to "adopt rules and regulations as are necessary to carry out the purpose and provisions of this article." (See Cal. Code Regs., tit. 22, § 98000 et seq.) Remedies for a violation of section 11135 include the suspension or termination of funding by the awarding state agency. (§ 11137; Cal. Code Regs., tit. 22, § 98370.) Section 11136 provides for an administrative hearing process which requires aggrieved individuals to pursue their discrimination claims with the state agency that has provided the funding to the program or activity. (§ 11136; Cal. Code Regs., tit. 22, § 98300 et seq.) The awarding state agency has authority to investigate and resolve discrimination claims. If a violation is found, the state agency must curtail state funding to the program or activity. In addition, a private party may bring a mandamus action to require an agency to comply with the regulations. (Cal. Code Regs., tit. 22, §§ 98002, 98003.)

Even before *Moradi-Shalal*, this court had established a standard for determining whether a private cause of action can be construed from a statute: " 'When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.' " (*Middlesex Ins. Co.* v. *Mann* (1981) 124 Cal.App.3d 558, 570 [177 Cal.Rptr. 495], citing Rest.2d Torts, § 874A.) Arguably, this test has been superseded by *Moradi-Shalal.* However, assuming the *Middlesex* test is still good law, Arriaga has not met its conditions. To imply a private right of action, the court must determine that a private right of action is *needed* to assure the effectiveness of the statute. Here, the comprehensive administrative enforcement scheme assures the effectiveness of the statute. In addition, as the *Rojo* court observed, this state already provides "any number of remedial theories to compensate for injuries 'relating to discrimination' [citation]." (*Rojo, supra,* 52 Cal.3d at p. 74.) We think the intention of the Legislature in enacting section 11135 was clear: to provide an alternative administrative remedy for discrimination by state-funded programs, not to add an additional private remedy for damages to those remedies already existing. No additional private right of action is needed.

We conclude that section 11135 does not provide a private right of action. The trial court properly granted judgment in favor of the University on the

cause of action based on section 11135.[9] Therefore we need not address whether material issues of fact existed as to whether the University or the Library was a "program or activity" under section 11135 and whether the University or Library received financial assistance from the state.

DISPOSITION

The judgment is affirmed.

Hollenhorst, J., and Timlin, J., concurred.

A petition for a rehearing was denied December 3, 1992, and appellant's petition for review by the Supreme Court was denied February 11, 1993.

---

[9]Even though we may disagree with the reason for the trial court's decision, we uphold that decision if another theory supported by the record justifies it. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10].)