[No. G011015. Fourth Dist., Div. Three. Feb. 24, 1993.]

MARIA TORRES et al., Plaintiffs and Appellants, v.
CITY OF YORBA LINDA et al., Defendants and Respondents.

## COUNSEL

Jonathan Lehrer-Graiwer for Plaintiffs and Appellants.

Rutan & Tucker, Leonard A. Hampel, Mark A. Thompson and M. Katherine Jenson for Defendants and Respondents.

## OPINION

**MOORE, J.**—Plaintiffs Maria Torres and Maria Lara filed this action challenging the validity of a proposed amended redevelopment project. Defendants City of Yorba Linda and the Yorba Linda Redevelopment Agency demurred on the ground plaintiffs lacked standing to maintain the lawsuit. The lower court sustained the demurrer without leave to amend and dismissed the action. We affirm.[1]

### PROCEDURAL AND FACTUAL BACKGROUND.

Plaintiffs filed the original complaint September 17, 1990, and before defendants responded to it, they submitted a first amended complaint. Defendants demurred to the first amended complaint claiming plaintiffs lacked standing to sue and attacking individual causes of action on other grounds. The trial court sustained the demurrer to the entire amended complaint with leave to amend based on defendants' standing objection.

The second amended complaint contains sixteen causes of action seeking declaratory and injunctive relief and issuance of a writ of mandate concerning the amended redevelopment plan's validity and its manner of

---

[1]Plaintiffs also challenge the trial court's order granting a motion to strike their third and sixth causes of action. Since we resolve this case on the issue of standing, we do not consider the validity of the order granting the motion to strike.

implementation. The pleading alleges the City of Yorba Linda approved a redevelopment plan known as the Yorba Linda Redevelopment Project in 1983. In July 1990, an amended redevelopment plan was adopted that added 328 noncontiguous acres to the original project. Plaintiffs claim the findings and determinations supporting adoption of the amended plan are invalid for several reasons: The area covered by the amendment has virtually no blight and was added to permit the financing of several public works projects; the plan merely accelerates the naturally occurring transition of the area from residential to commercial activity; the amendment violates statutory provisions on merging project areas thereby permitting the city to improperly use tax levies from the original project area for the area covered by the amended plan; and, when the city adopted the amendment, its general plan lacked a valid housing element.

Concerning standing, the amended complaint alleges both plaintiffs currently live in Anaheim. Plaintiffs are interested in moving to Yorba Linda if they could find decent, safe, sanitary and affordable housing. Each plaintiff paid a sales tax to the City of Yorba Linda within one year before filing the action.[2] They exhausted their administrative remedies prior to filing suit. Lara alleges she and her family are classified as lower income and use or are eligible to receive a number of health and social services funded wholly or in part by the County of Orange.

Paragraph 8 of the amended complaint states as follows: "The above Plaintiffs are beneficially interested in the enforcement of the Defendants' public duties that have been violated in the manner alleged . . . . Specifically, the failure of the City and the Redevelopment Agency to comply with the California Redevelopment Law will divert to the City and the Redevelopment Agency taxes which would otherwise be paid to the County of Orange, school districts with jurisdiction in the City, and other taxing agencies. Among other things, this diversion will decrease the funds available to Orange County for social services, including health and welfare benefits to lower income persons and families, in general, and those benefits utilized or likely to be utilized by Plaintiffs. Additionally, the failure of the City to have a valid Housing Element at the time of its adoption of the Amended Redevelopment Plan deprives plaintiffs and all residents of the City of the opportunity to consider the Amended Redevelopment Plan in the context of a valid Housing Element which provides realistic programs for the development of housing affordable to persons and families of low and moderate income."

[2]Although the nature of the tax paid by plaintiffs is not identified in the second amended complaint, at oral argument plaintiffs' counsel conceded it was a sales tax imposed on each plaintiff for the purchase of one or more items in the City of Yorba Linda.

Defendants demurred to the second amended complaint, again arguing it failed to allege facts demonstrating plaintiffs had standing. They requested the court take judicial notice of the following pending validation actions: (1) Lara v. City of Anaheim (Super. Ct. Orange County, No. 633204); (2) Torres v. City of Cypress (Super. Ct. Orange County, No. 633689); (3) Coffman-Tikker v. City of Buena Park (Super. Ct. Orange County, No. 635442).

At the same time defendants filed their demurrer to the second amended complaint, plaintiffs moved for the issuance of a writ of mandate directing Yorba Linda to correct the housing element of its general plan and invalidating the redevelopment plan. Defendants submitted opposing declarations, and both parties filed points and authorities and documentary evidence concerning the motion.

One exhibit submitted was an agreement between defendants, the County of Orange, and the county's fire, flood and park districts. Under it the redevelopment agency agreed to pass through 65 percent of the county's share and each district's entire share of the expected increased tax revenues from the amended redevelopment plan. In their opposition to the demurrer, plaintiffs acknowledged the existence of this agreement.

During the hearing on defendants' demurrer, plaintiffs' counsel declared that, if permitted, he would further amend the complaint as follows: "[T]o allege that Maria Torres is a property owner and a property taxpayer in the County of Orange and to allege that the failure of the City of Yorba Linda to have an adequate housing element and to have land use regulations which permit the development of affordable housing have an impact on the price of that housing and prevent plaintiffs from the—from having the opportunity to buy housing that is affordable to them in the City of Yorba Linda."

The lower court sustained the demurrer without leave to amend and found plaintiffs' motion for a writ of mandate to be moot. From the judgment dismissing the action this appeal followed.

## DISCUSSION

Code of Civil Procedure section 367[3] provides, "Every action must be prosecuted in the name of the real party in interest . . . ." ■ The issue of whether a party has standing focuses on the plaintiff, not the issues he or she seeks to have determined. (*Flast* v. *Cohen* (1968) 392 U.S. 83, 99 [20 L.Ed.2d 947, 961, 88 S.Ct. 1942]; *Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 159 [101 Cal.Rptr. 880, 496 P.2d 1248].)

---

[3]All statutory references are to the Code of Civil Procedure unless otherwise specified.

Generally, a plaintiff must show he or she or those he or she properly represents have either suffered or are threatened with an injury of sufficient magnitude that it is reasonably assured the lawsuit will provide an adequate presentation of all relevant facts and issues. (*California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 22-23 [61 Cal.Rptr. 618].) "A party enjoys standing to bring his complaint into court if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case. . . . [W]e must determine standing by a measure of the 'intensity of the plaintiff's claim to justice.' [Citation.]" (*Harman* v. *City and County of San Francisco, supra,* 7 Cal.3d at p. 159.)

The question of standing to sue may be raised by demurrer. (*Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6]; *Killian* v. *Millard* (1991) 228 Cal.App.3d 1601, 1605 [279 Cal.Rptr. 877].) ■ "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]. See also *Lacher* v. *Superior Court* (1991) 230 Cal.App.3d 1038, 1043 [281 Cal.Rptr. 640].)

## I. *Section 863*

■ ■ Plaintiffs contend they have standing to challenge Yorba Linda's amended redevelopment plan under section 863 because Torres owns property in the county and pays taxes on it[4] and Lara is a recipient of county social services. They also claim their interest in maintaining this litigation is equivalent to that found sufficient in prior cases construing section 863 and

---

[4]In a deposition taken in one of the other validation proceedings Torres testified she owns the property along with her parents and an uncle and makes monthly payments to her father who uses the money to pay the mortgage and property tax bills. Defendants assert this testimony establishes Torres is not a taxpayer. We consider the fact that Torres is a record owner of the property, and consequently liable to pay the property tax levy, sufficient to support her claim to be a taxpayer. The method by which she satisfied her tax obligation is not

denying them standing would violate their right to equal protection of the laws.

This action seeks a judicial determination of an amended redevelopment project's validity. Under the Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.) cities and counties may create redevelopment projects to eliminate blight, provide housing, jobs and a better environment. (Health & Saf. Code, §§ 33037, 33071. See *Marek* v. *Napa Community Redevelopment Agency* (1988) 46 Cal.3d 1070, 1082 [251 Cal.Rptr. 778, 761 P.2d 701].) Public agencies are authorized to file an action to determine the validity of a redevelopment project. (§ 860; Health & Saf. Code, § 33501 subd. (a).) However, if a public agency fails to commence a validation proceeding, section 863 provides "any interested person may bring [the] action . . . ." The question presented here is whether plaintiffs constitute interested persons under section 863.

That phrase has been narrowly construed. In *Associated Boat Industries* v. *Marshall* (1951) 104 Cal.App.2d 21 [230 P.2d 379], an organization consisting of boat builders, distributors and dealers, filed a declaratory relief action challenging the validity of regulations imposed on its individual members under a statute that permitted "Any interested person" to seek such relief. The trial court sustained a demurrer without leave to amend and the Court of Appeal affirmed. "The Legislature, in using the words 'any interested person' had before it long established legislative precedents which make it clear that an 'interested person' in the sense in which those words are used in the statute is a person having a direct, and not a merely consequential, interest in the litigation." (*Id.* at p. 22.)

Three reported cases have discussed the use of the phrase "any interested person" in section 863. In *Card* v. *Community Redevelopment Agency* (1976) 61 Cal.App.3d 570 [131 Cal.Rptr. 153], citizens, residents and taxpayers of the city covered by an existing redevelopment plan and who owned property assessed for taxes by the county, successfully challenged a purported amendment to the plan. On appeal, defendant questioned plaintiffs' standing to sue. The appellate court summarily rejected the claim relying on the parties' stipulation which, in part, stated each plaintiff was "a citizen, resident and taxpayer of the city and 'a person interested in the matter of the amendments to the redevelopment plans . . . .' " (*Id.* at pp. 574-575, fn. 6.)

*Regus* v. *City of Baldwin Park* (1977) 70 Cal.App.3d 968 [139 Cal.Rptr. 196] involved a validation action by individuals who were residents and

controlling. Thus, defendants' analogies to a tenant paying rent to a landlord and a customer making a purchase in a retail store are inapposite.

taxpayers of the city and who owned real property assessed for taxes by the county and other taxing agencies, and an unincorporated association consisting of city residents. The trial court found plaintiffs lacked standing because none of them owned property within the redevelopment project's boundaries. The Court of Appeal reversed. "We think it unlikely the Legislature intended to limit review of such projects to actions initiated by the agency itself or by residents of the project area, given the presumptively disadvantaged and blighted condition of a redevelopment project area, which may be largely vacant or in a state of disrepair and disuse. As taxpayers of the City of Baldwin Park and of the County of Los Angeles, plaintiffs have a financial interest in the outcome of this proceeding, in that the tax increment financing of the Project will divert tax revenues from the taxing agencies to which plaintiffs pay taxes to the treasury of the Redevelopment Agency. Such a financial interest is likely to motivate plaintiffs to prosecute the action vigorously and provides sufficient basis to give them standing. . . ." (*Id.* at p. 972.)

Finally, *Citizens Against Forced Annexation* v. *County of Santa Clara* (1984) 153 Cal.App.3d 89 [200 Cal.Rptr. 166], involved an action by an unincorporated association and several individuals challenging the validity of a city's efforts to annex several territories. The unincorporated association consisted of individuals who were residents, landowners or voters of the city or the territories. The trial court found that 21 individual plaintiffs, who were landowners, residents or registered voters of particular annexed territories, and the association could sue but limited their action to 19 territories.

Plaintiffs appealed. The Court of Appeal upheld the trial court's finding the 21 individual plaintiffs had standing to challenge the annexation of the 19 territories because they claimed to be landowners, residents or registered voters in the affected areas. (153 Cal.App.3d at p. 95.) But it reversed as to 10 additional territories. The appellate court concluded the association had standing concerning the 10 territories since its membership included persons who were property owners, residents or voters in these areas. (*Id.* at p. 100.)

Under these cases, plaintiffs have not alleged sufficient facts to establish their standing to maintain this action. Both plaintiffs are residents of Anaheim, not Yorba Linda. Neither one pays property taxes in that city or is otherwise beneficially interested in the area covered by the amended redevelopment plan. While each alleges an "interest" in moving to Yorba Linda, they apparently have filed similar validation proceedings challenging redevelopment projects in several other communities. There is no allegation either has attempted but failed to find affordable housing in Yorba Linda.

One plaintiff alleges she owns real property and pays property taxes to the county, and the other claims she and her family use or are eligible for several social services partially funded by the county with property taxes. These assertions render them indistinguishable from most other county residents.[5]

Plaintiffs' reliance on *Regus* v. *City of Baldwin Park, supra,* 70 Cal.App.3d 968 is without merit. There the plaintiffs resided in the city covered by the redevelopment project. *Regus* does not state a party has standing where he or she is merely a county taxpayer.

The assertion that this redevelopment project will "divert" revenue from local taxing entities is questionable. The amended complaint alleges Yorba Linda's project is to be financed by issuing bonds secured by tax increment revenue. Under this method, real property located within the redevelopment project area is assessed in the year of the project's adoption. The county and other taxing agencies receive the revenues attributable to that assessed value and pass the portion exceeding the original assessment on to the redevelopment agency. (Health & Saf. Code, §§ 33640, 33641, 33670, 33675. See also *Brown* v. *Community Redevelopment Agency* (1985) 168 Cal.App.3d 1014, 1017 [214 Cal.Rptr. 626].) In other words, the redevelopment project pays for itself by taking advantage of increased property tax revenues generated by the project area's renovation. (*Bell Community Redevelopment Agency* v. *Woosley* (1985) 169 Cal.App.3d 24, 27 [214 Cal.Rptr. 788]; 2 Longtin, Cal. Land Use (2d ed. 1987) Community Redevelopment, § 10.24, pp. 911-912.) Consequently, absent a redevelopment project it is doubtful local taxing agencies would receive increased revenues from property within the project area.

Furthermore as defendants point out, in 1976, the Legislature amended the Community Redevelopment Law allowing for the creation of a fiscal review committee to consider a proposed redevelopment project's effect on local taxing agencies before its adoption. (Health & Saf. Code, § 33353 et seq.) The committee, which consists of representatives from each taxing entity affected by a proposed redevelopment project that intends to use tax increment financing, prepares and sends a report to the redevelopment agency

---

[5]Plaintiffs also cite two other cases in support of their argument on standing: *Sweetwater Valley Civic Assn.* v. *City of National City* (1976) 18 Cal.3d 270 [133 Cal.Rptr. 859, 555 P.2d 1099], and the Court of Appeal's opinion in *Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903 [13 Cal.Rptr.2d 245, 838 P.2d 1198]. *Sweetwater* did not consider the issue of standing. A decision is not authority for propositions not considered by the court. (*McDowell & Craig* v. *City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].) In *Board of Supervisors* the Supreme Court granted review and subsequently issued an opinion that did not consider the parties' standing to sue.

detailing its analysis on the proposed project's fiscal impact. (Health & Saf. Code, § 33353.5, subd. (a).) If the committee concludes the project will impose a financial burden on a taxing agency its report may also recommend action to alleviate the problem, including modifying the amount of tax increment revenues to be received by the agency or making payments to the affected taxing agency. (Health & Saf. Code, § 33353.5, subd. (c).)

This administrative procedure further diminishes plaintiffs' interest in this action. Although not alleged in the second amended complaint, the documentary evidence presented concerning plaintiffs' writ request reflects the County of Orange and other taxing agencies created a fiscal review committee in this case and reached an agreement with defendants concerning the distribution of the tax increment levies from the amended redevelopment plan. Thus, plaintiffs' interest in this case is considerably less than the interest of the plaintiffs in *Regus*.

Plaintiffs also rely on *Stocks* v. *City of Irvine* (1981) 114 Cal.App.3d 520 [170 Cal.Rptr. 724]. There persons with low and moderate incomes living outside Irvine sued the city for declaratory and injunctive relief, alleging it engaged in exclusionary zoning practices that had the following adverse effects on them. First, it systematically prevented the development of affordable housing in the city, thereby prohibiting them from living within Irvine. Second, the city's zoning practices increased the housing costs in the regional housing market as well.

The Court of Appeal found plaintiffs had standing. "It is sufficient that they show a causal relationship by alleging that the city's zoning practices have excluded them from desired residency in that city or that those practices have raised their housing costs outside that city by adversely affecting the regional housing market. Such allegations show membership in the class discriminated against and the 'real' and 'personal' interest that entitles plaintiffs to bring the action. . . ." (114 Cal.App.3d at p. 532.)

In so ruling, the *Stocks* court declined to follow *Warth* v. *Seldin* (1975) 422 U.S. 490 [45 L.Ed.2d 343, 95 S.Ct. 2197], where the United States Supreme Court, under a similar set of facts, held standing had not been established: "Petitioners must allege facts from which it reasonably could be inferred that, absent the respondents' restrictive zoning practices, there is a substantial probability that they would have been able to purchase or lease in Penfield and that, if the court affords the relief requested, the asserted inability of petitioners will be removed. [Citation.]" (*Id.* at p. 504 [45 L.Ed.2d at p. 358].)

First, *Stocks* is clearly distinguishable from the present case. At most, plaintiffs allege the city's lack of a valid housing element "deprives plaintiffs . . . of the opportunity to consider the Amended Redevelopment Plan

in the context of a valid Housing Element which provides realistic programs for the development of housing affordable to persons and families of low and moderate income." Plaintiffs are not alleging Yorba Linda's land-use and zoning laws prohibit the construction of low or moderate income housing or that it has increased the cost of housing outside the city.

Second, we disagree with *Stock*'s analysis of the standing issue. The *Stocks* court asserted it was not obligated to follow *Warth* and adhere to the United States Supreme Court's standing requirements. ██ While true, California decisions, like the federal courts, generally require a plaintiff to have a personal interest in the litigation's outcome. The courts of this state are not authorized to issue advisory opinions. (*Stocks* v. *City of Irvine, supra,* 114 Cal.App.3d at p. 531. See also *Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793, 798 [166 Cal.Rptr. 844, 614 P.2d 276]; *California Water & Telephone Co.* v. *County of Los Angeles, supra,* 253 Cal.App.2d at pp. 22-23.) ██ Here, plaintiffs have failed to allege facts establishing they have the requisite personal interest necessary to maintain this lawsuit.

*Stocks* also relies on the purported "public interest" litigation exception to support its conclusion. (114 Cal.App.3d at p. 533.) This exception is usually applied in cases where an association sues on behalf of its members. (*California Dental Assn.* v. *California Dental Hygienists' Assn.* (1990) 222 Cal.App.3d 49, 60-62 [271 Cal.Rptr. 410]; *Citizens Against Forced Annexation* v. *County of Santa Clara, supra,* 153 Cal.App.3d at p. 98; *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 122, 127 [109 Cal.Rptr. 724].) It is not applicable here. Consequently, we conclude plaintiffs are not entitled to bring this action under section 863.

## II. *Taxpayer Standing*

██ Next, plaintiffs contend they have standing to sue as taxpayers under both the common law and section 526a. They claim the payment of a sales tax within the City of Yorba Linda gives them the status of taxpayers and an interpretation of section 526a which limits it to only property taxpayers would violate their right to equal protection of the law.

██ Case law has established a taxpayer may, in his or her representative capacity, sue a municipality concerning fraud, collusion, ultra vires, or a failure on the part of the governmental body to perform a duty specifically enjoined. (*Silver* v. *City of Los Angeles* (1961) 57 Cal.2d 39, 40-41 [17 Cal.Rptr. 379, 366 P.2d 651]; *Los Altos Property Owners Assn.* v. *Hutcheon* (1977) 69 Cal.App.3d 22, 26 [137 Cal.Rptr. 775].) Section 526a provides: "An action to obtain a judgment, restraining and preventing any illegal

expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the State, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein. . . ."

The courts have liberally construed the standing requirements for taxpayers. "The primary purpose of [section 526a] . . . is to 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' [Citation.]" (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 267-268 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].) Thus, taxpayer standing exists where the amount of the challenged expenditure is small or an allegedly illegal procedure actually saves taxes, where a purportedly illegal expenditure does not come from tax revenues, where the action is brought by a nonresident taxpayer, and even where there are other persons directly affected by the challenged government action. (*Id.* at p. 268; *Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 447-449 [166 Cal.Rptr. 149, 613 P.2d 210].)

Nonetheless, a plaintiff must establish he or she is a taxpayer to invoke standing under section 526a or the case law. (See *McConoughey* v. *City of San Diego* (1900) 128 Cal. 366, 367-368 [60 P. 925]; *Orcutt* v. *Pasadena Land and Water Co.* (1908) 152 Cal. 599, 601-602 [93 P. 497].) ■ Contrary to plaintiffs' analysis, a sales tax is a levy imposed on the retailer, not the consumer.

Revenue and Taxation Code section 6051 states in part, "For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers . . . ." In *Western Lithograph Co.* v. *State Bd. of Equalization* (1938) 11 Cal.2d 156 [78 P.2d 731, 117 A.L.R. 838], the Supreme Court explained the sales tax as follows: "The provisions of the act itself specifically are that the tax is laid upon and is a direct obligation of the retailer. Although the act furnishes the method by which the retailer may calculate reimbursement to himself by listing separately the amount of the tax from the sales price, nevertheless [the] provisions of the act specially negative any intent of the legislature that the tax should be considered as a tax on the consumer. In every case in which that question has arisen . . . , the courts have uniformly and consistently recognized the legislative intent and adhered to the construction that the tax is upon the retailer and not upon the consumer. . . ." (*Id.* at p. 162. See also *Xerox Corp.* v. *County of Orange* (1977) 66 Cal.App.3d 746, 756 [136 Cal.Rptr. 583]. Contra, Myers, *Standing*

*in Public Interest Litigation: Removing the Procedural Barriers* (1981) 15 Loyola L.A. L.Rev. 1, 7-8.)[6]

While the price of the goods plaintiffs purchased in Yorba Linda was increased by the amount of the sales tax, the tax was imposed on the person who sold the goods to them. Consequently, plaintiffs cannot assert standing as taxpayers in this case under either the common law or section 526a based on their purchase of goods within the City of Yorba Linda.[7]

### DISPOSITION

The judgment is affirmed.

Sills, P. J., and Sonenshine, J., concurred.

On March 25, 1993, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 20, 1993.

---

[6]In *Diamond National Corp.* v. *State Equalization Bd.* (1976) 425 U.S. 268 [47 L.Ed.2d 780, 96 S.Ct. 1530], the United States Supreme Court rejected the approach of the California courts and held that in sales of goods to a national bank "the incidence of the state and local sales taxes falls upon the national bank as purchaser and not upon the vendors." (*Id.* at p. 268 [47 L.Ed.2d at p. 781].) Nonetheless, California courts have concluded the *Diamond* ruling "does not affect the state court's interpretation insofar as it defines the legal incidence of the tax independently of a claim of federal immunity." (*Xerox Corp.* v. *County of Orange, supra,* 66 Cal.App.3d at p. 757.) Federal immunity is not at issue in this case.

[7]Plaintiffs also claim that denying standing to them under sections 863 and 526a violates their constitutional right to equal protection of the law. The argument is without merit. The case law clearly establishes plaintiffs are not similarly situated with others determined to have standing under these circumstances