[No. B170904. Second Dist., Div. Five. Feb. 14, 2005.]

ELDON RAY BLUMHORST, Plaintiff and Appellant, v.
JEWISH FAMILY SERVICES OF LOS ANGELES et al., Defendants and
Respondents.

---

**COUNSEL**

Law Office of Marc E. Angelucci and Marc E. Angelucci for Plaintiff and Appellant.

O'Melveny & Myers, Gordon E. Krischer, Adam J. Karr, Jeffrey E. Raskin; California Women's Law Center, Vicky Barker, Nancy Solomon and Marci Fukuroda for Defendants and Respondents Jewish Family Services of Los Angeles, House of Ruth, Su Casa Family Crisis and Support Center, Domestic Violence Center of the Santa Clarita Valley, Rainbow Services, Ltd., Peace and Joy Care Center, Southern California Alcohol and Drug Program, Inc., Haven Hills, Inc., and Young Women's Christian Association of Glendale, California.

Morris Polich & Purdy, Beth Kahn, Richard H. Nakamura, Jr., and Maureen M. Home for Defendant and Respondent Haven House, Inc.

DLA Piper Rudnick Gray Cary U.S., and Justin S. Suhr for Battered Women's Justice Project as Amicus Curiae on behalf of Defendants and Respondents.

Helene E. Swanson and Jaime M. Gher for The California Commission on the Status of Women as Amicus Curiae on behalf of Defendants and Respondents.

Nancy K. D. Lemon and Amy Keating for California Alliance Against Domestic Violence as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**KRIEGLER, J.**—In this civil rights action, plaintiff and appellant Eldon Ray Blumhorst appeals from a judgment of dismissal, following the sustaining of a demurrer without leave to amend and the granting of judgment on the pleadings, in favor of defendants and respondents Jewish Family Services of Los Angeles, House of Ruth, Inc., Su Casa Family Crisis and Support Center, Domestic Violence Center of the Santa Clarita Valley, Rainbow Services, Ltd., Peace and Joy Care Center, Haven Hills, Inc., Southern California Alcohol and Drug Program, Inc., Young Women's Christian Association of Glendale, California, and Haven House, Inc. (collectively, shelters).[1] Because Blumhorst lacked standing to bring the action, individually or as a civil rights "tester,"[2] we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### Allegations of the Complaint

On March 12, 2003, Blumhorst filed a complaint for an injunction against shelters for violation of Government Code section 11135.[3] Blumhorst alleged each shelter operated a domestic violence shelter and received financial assistance from the State of California. Between December 9 and December 16, 2002, Blumhorst called shelters' hotline and stated "he needed shelter from domestic violence perpetrated against him." "[Shelters] refused to provide [Blumhorst] with shelter because he is a man. It is [shelters'] policy to refuse . . . shelter to men." He requested an injunction "permanently enjoining the denial of full and equal access to each [shelter's] benefits, programs and activities on the basis of sex."

### Demurrer to the Complaint

Shelters each filed a demurrer to the complaint on the ground that the complaint failed to state a cause of action for violation of Government Code

---

[1] Where appropriate, Haven House, Inc. will be referred to as a separate party in this opinion.

[2] A tester in the context of this case is one who falsely poses as a victim of domestic violence in need of shelter in order to gather evidence of discrimination. (Cf. *Kyles v. J.K. Guardian Sec. Services, Inc.* (7th Cir. 2000) 222 F.3d 289, 292, fn. 1 [employment discrimination tester].)

[3] Government Code section 11135 provides, in pertinent part: "(a) No person in the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, color, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

section 11135,[4] because shelters were lawful programs benefiting women which, pursuant to section 11139,[5] were exempt from the prohibitions of section 11135. Haven House, Inc. further contended, inter alia, that the complaint failed to state a cause of action because Blumhorst lacked standing, in that Blumhorst did not allege he was a victim of domestic violence in need of shelter who was discriminated against. He alleged only that he had made a setup call. Blumhorst filed opposition to the demurrers, contending he had standing as a civil rights tester and, accordingly, did not need to have a bona fide need for emergency shelter as a battered person. He further contended that section 11139 was unconstitutional. The trial court sustained the demurrer to each cause of action with leave to amend, stating, inter alia, the allegations concerning standing were deficient.

*Allegations of the First Amended Complaint*

On August 12, 2003, Blumhorst filed a first amended complaint for injunction against shelters, County of Los Angeles, and state defendants.[6] He alleged that male victims of domestic violence have been denied access to domestic violence shelters for years on the basis of their sex. There were many male victims of domestic violence. Blumhorst "is . . . a battered husband. Today he walks with a limp . . . from one of his ex-wife's assaults in which she hurled a piece of furniture at him. When [Blumhorst] was assaulted by his partner, he sought help from social service organizations but found little or no help because he was a male. Consequently, [Blumhorst] realized the injustice that males often face as domestic violence victims and he joined the National Coalition of Free Men's . . . Los Angeles Chapter ('NCFM-LA')." "NCFM-LA . . . decided to test state-funded domestic violence shelters to document whether they discriminate by sex. [Blumhorst] agreed to do the testing. Between December 9 and December 14, 2002, [Blumhorst] called state-funded domestic violence shelters who are defendants in this case. He stated that he was a domestic violence victim and that he needed shelter to escape his violent partner. Each defendant denied him shelter because he was a male, not due to capacity or other reasons." In a separate cause of action against each shelter, Blumhorst alleged shelters operated a domestic violence shelter and received financial assistance from the State of California. Between December 9 and December 16, 2002, Blumhorst called each shelter and stated "he needed shelter from domestic violence perpetrated against him." He was refused shelter because he was a

---

[4] Hereinafter, all statutory references will be to the Government Code, unless specified otherwise.

[5] Section 11139 provides, in pertinent part: "This article shall not be interpreted in a manner that would adversely affect lawful programs which benefit the disabled, the aged, minorities, and women."

[6] The county and state defendants are not parties to this appeal.

man. It was each shelter's policy to refuse shelter to men. He requested an injunction permanently enjoining the denial of full and equal access to each shelter's programs on the basis of sex.

*Demurrer to the First Amended Complaint*

Shelters each filed a demurrer to the first amended complaint on the ground, inter alia, the complaint failed to state a cause of action in that they were exempt from section 11135 pursuant to section 11139. Blumhorst filed opposition to the demurrers.

The trial court sustained the demurrers to the first amended complaint without leave to amend, on the ground that, shelters were exempt from section 11135 under section 11139, and section 11139 was not unconstitutional. A judgment of dismissal was filed in favor of shelters on all causes of action and this timely appeal followed.

## DISCUSSION

*Standard of Review*

■ "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "To meet [the] burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court." (*William S. Hart Union High School Dist. v. Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1621 [277 Cal.Rptr. 645].) "[W]e may affirm a trial court judgment on any basis presented by the record whether or not relied upon by the trial court." (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1 [119 Cal.Rptr.2d 606].)

*Standing*

Haven House, Inc. contends Blumhorst lacks standing to sue for a violation of section 11135. Blumhorst responds that he has standing for three reasons. First, Blumhorst argues the text and history of sections 11135 and 11139 indicate that broad standing was intended. In support of this assertion, Blumhorst relies on *Kyles v. J.K. Guardian Sec. Services, Inc.* (7th Cir. 2000) 222 F.3d 289, 292. Second, Blumhorst contends he was "actually injured" in that he previously needed shelter but none was available to men, and in any event, as a civil rights tester, he was sufficiently injured to establish standing. Blumhorst relies on *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24 [219 Cal.Rptr. 133, 707 P.2d 195] to support this contention. Third, Blumhorst argues standing rules are relaxed for public interest purposes.

■ A litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on the merits. (*Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 71 [164 Cal.Rptr. 279].) "If we were to conclude that plaintiff did not have standing to maintain the action, not having been personally damaged by the defendants' conduct, then there would be no need to address the merits of her cause. Equally wasteful of judicial resources would be a resolution on the merits without reaching the standing issue." (*Ibid.*) We will not address the merits of litigation when the plaintiff lacks standing, because " 'California courts have no power . . . to render advisory opinions or give declaratory relief.' " (*Municipal Court v. Superior Court (Gonzalez)* (1993) 5 Cal.4th 1126, 1132 [22 Cal.Rptr.2d 504, 857 P.2d 325].) Standing " 'goes to the existence of a cause of action.' [Citation.]" (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 862, p. 320.)

■ Lack of standing may be raised at any time in the proceeding, including at trial or in an appeal. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361 [87 Cal.Rptr.2d 654, 981 P.2d 499] [associational standing to seek writ of mandate under Code Civ. Proc., § 1086]; *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438, 439 [261 Cal.Rptr. 574, 777 P.2d 610] [citizen standing to seek writ of mandate to compel public agency to perform its public duty]; 5 Witkin, Cal. Procedure, *supra*, Pleading, § 862, p. 320.) We may decide a standing issue even if the trial court did not rule on the issue. (*Hernandez v. Atlantic Finance Co., supra*, 105 Cal.App.3d at p. 71; 5 Witkin, Cal. Procedure, *supra*, Pleading, § 862, p. 320.)

■ "Standing requirements will vary from statute to statute based upon the intent of the Legislature and the purpose for which the particular statute was enacted." (*Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1385, 1387, 1389–1390, 1393 [271 Cal.Rptr.

99] [in a suit under a now modified unfair competition statute, injury was not required, because the then existing version of the statute expressly gave standing to "the general public" to sue for relief].)

■ Code of Civil Procedure section 367 provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Accord, 5 Witkin, Cal. Procedure, *supra*, Pleading, § 862, p. 320.) "The issue of whether a party has standing focuses on the plaintiff, not the issues he or she seeks to have determined." (*Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1040 [17 Cal.Rptr.2d 400].) "A person who invokes the judicial process lacks standing if he, or those whom he properly represents, 'does not have a real interest in the ultimate adjudication because [he] has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented.' [Citation.]" (*Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703, 707 [93 Cal.Rptr.2d 580]; see also *Common Cause v. Board of Supervisors*, *supra*, 49 Cal.3d at pp. 439–440 ["[t]he purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor"]; *Residents of Beverly Glen, Inc. v. City of Los Angeles* (1973) 34 Cal.App.3d 117, 129 [109 Cal.Rptr. 724] [associational standing to sue on behalf of members who were injured by defendant].) "California decisions . . . generally require a plaintiff to have a personal interest in the litigation's outcome." (*Torres v. City of Yorba Linda*, *supra*, 13 Cal.App.4th at p. 1046.) "[T]he purported 'public interest' litigation exception [to the personal interest requirement] . . . is usually applied in cases where an association sues on behalf of its members." (*Ibid.*)

### 1. *Standing Under Section 11139*

We turn first to Blumhorst's contention that the text and history of sections 11135 and 11139 indicate broad standing was intended. We find no support for this position in the language or history of the statutes, nor in the reasoning of *Kyles v. J.K. Guardian Sec. Services, Inc.*, *supra*, 222 F.3d 289, upon which Blumhorst relies.

■ " 'In interpreting a statute, we apply the usual rules of statutory construction. "We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] . . . To determine intent. ' "The court turns first to the words themselves for the answer." ' [Citations.] 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " [Citation.] We give the language of the statute its "usual,

ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose . . . . Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." ' [Citation.]" (*Shewry v. Arnold* (2004) 125 Cal.App.4th 186, 193 [22 Cal.Rptr.3d 488].)

In its original form, section 11135 et seq. was intended to shift the burden of proving unlawful discrimination from the person being discriminated against to the state agency administering the program. (*Arriaga v. Loma Linda University* (1992) 10 Cal.App.4th 1556, 1562–1565 [13 Cal.Rptr.2d 619].) *Arriaga* held that section 11135 did not create a private right of action. (10 Cal.App.4th at pp. 1562–1565.)

*Arriaga* was effectively overruled by the Legislature in 1999 and 2001 by the addition of the fourth paragraph to section 11139, which did create a private right of action. The fourth paragraph was added to clarify the legislative intent that "a victim of unlawful discrimination" could enforce the prohibition against discrimination in section 11135 through an action for equitable relief without pursuing administrative remedies first. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 677 (2001–2002 Reg. Sess.) as introduced Feb. 22, 2001; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1670 (1999–2000 Reg. Sess.).)

While the Legislature did create a private cause of action for civil rights discrimination by the amendments to section 11139, it did not relax traditional standing requirements. There is nothing in the plain language of sections 11135 and 11139, as amended, or in the legislative history, to warrant deviation from the rule that standing requires a plaintiff to allege that he or she was personally damaged.

Blumhorst's reliance on *Kyles v. J.K. Guardian Sec. Services, Inc.*, *supra*, 222 F.3d 289 to support his interpretation is misplaced. *Kyles* did not involve an interpretation of section 11135. *Kyles* held that employment testers had standing to sue for employment discrimination under title VII of the Civil Rights Act of 1964, 42 United States Code section 2000e, but not under section 1 of the Civil Rights Act of 1866, 42 United States Code section 1981. "[T]he two statutes are different in important respects. Title VII takes aim at a wide range of racially discriminatory practices which, among other things, either 'deprive or tend to deprive any individual of employment opportunities. . . .' 42 U.S.C. § 2000e-2(a)(2) . . . . It also bestows on any person 'aggrieved' by a violation of the statute the right to initiate a charge,

§ 2000e-5(b), signaling that Congress meant to extend standing to the outer boundaries laid down by Article III of the Constitution. . . . Section 1981, by contrast, does not proscribe any practice that might tend to interfere with one's ability to enter and enforce a contract; it protects the right to enter into and preserve a contractual relationship, period. Moreover, there is nothing in section 1981's language suggesting that Congress meant to stretch standing to the limits of Article III." (*Kyles v. J.K. Guardian Sec. Services, Inc., supra,* 222 F.3d at pp. 302–303, italics omitted.) While *Kyles* demonstrates that standing requirements may be relaxed by statute, there is nothing in section 11135 or section 11139 to support a finding that the Legislature intended to broaden the concept of standing to a party who did not suffer injury.

### 2. *Actual Injury and Tester Standing*

Blumhorst argues he had standing because he alleged an actual injury, and in any event, he had standing as a tester who was denied shelter on the basis shelter was unavailable to men. Neither argument has merit.

Blumhorst's argument that he alleged a sufficient actual injury to support a finding of standing is without merit. Blumhorst alleged he is a battered husband who walks with a limp, as a result of one of his ex-wife's assaults in which she hurled a piece of furniture at him. He further alleged that when he was assaulted by his partner, he sought help from social service organizations but found little or no help because he was a male. Later, Blumhorst realized the injustice that males often face as domestic violence victims, and he joined the Los Angeles Chapter of the National Coalition of Free Men, an organization that decided to test state-funded domestic violence shelters to document whether they discriminate by sex. Blumhorst alleged that he agreed to act as a tester, and between December 9 and December 14, 2002, he called state-funded domestic violence shelters who are defendants in this case. Blumhorst alleged that he stated that he was a domestic violence victim and needed shelter to escape his violent partner, but was denied because he was a male.

■ Blumhorst's pleadings allege he had suffered domestic violence in the past, not at the time he made the test calls to shelters. He does not allege that when he suffered domestic violence, he asked shelters for shelter and was denied. Thus, he does not allege he was a victim of shelters' alleged unlawful discriminatory practices. Accordingly, Blumhorst lacks standing, in that he was not personally aggrieved.

■ We also reject Blumhorst's argument that he has standing as a tester. As indicated above, sections 11135 and 11139 do not provide for standing by a party who is not personally injured. The right to sue for a violation of section 11135 exists in injured victims of unlawful discrimination. The statute

does not give standing to a plaintiff who was not injured by a defendant's alleged discriminatory practices.

██ Blumhorst's argument that *Koire v. Metro Car Wash, supra,* 40 Cal.3d 24, supports the concept of standing for a tester is mistaken. There was no issue of standing in *Koire,* and no discussion of the concept is contained in the opinion. The plaintiff in *Koire* was personally the victim of discrimination, so the court had no occasion to discuss standing in general or standing as a tester. The law is well settled that cases are not authority for propositions not considered. (*People v. Myers* (1987) 43 Cal.3d 250, 265, fn. 5 [233 Cal.Rptr. 264, 729 P.2d 698].)

██ Further, for standing to seek the prospective relief of an injunction, a plaintiff must show a likelihood he will be harmed in the future if the injunction is not granted. (*Coral Construction, Inc. v. City & County of San Francisco* (2004) 116 Cal.App.4th 6, 17, 24 [10 Cal.Rptr.3d 65] [contractor who sought to enjoin a local affirmative action ordinance concerning bidding on public contracts, who had bid in the past and was able and willing to bid in the future, satisfied the likelihood of future harm requirement for standing to sue for injunctive relief].) Blumhorst makes no allegation of a likelihood of future harm in the first amended complaint.

### 3. *Relaxed Standing Rules for Public Interests*

Blumhorst's final argument on standing is that the rules are relaxed in matters involving the public interest. (See *Residents of Beverly Glen, Inc. v. City of Los Angeles, supra,* 34 Cal.App.3d at pp. 121–127.) We reject application of the concept that cases involving public interests broaden the standing rules for purposes of the instant case. Section 11139, as discussed above, contains no suggestion of an intent to broaden the standing rule. Further, the Legislature identified the public interest in the following language in section 11139: "This article shall not be interpreted in a manner that would frustrate its purpose. [¶] This article shall not be interpreted in a manner that would adversely affect lawful programs which benefit the disabled, the aged, minorities, and women." Adoption of a relaxed rule of standing, applied to Blumhorst's first amended complaint, would frustrate the purpose of section 11139, in that the section specifically prohibits an interpretation that would adversely affect a lawful program benefiting women. Finally, "the purported 'public interest' litigation exception [to the personal interest requirement] . . . is usually applied in cases where an association sues on behalf of its members." (*Torres v. City of Yorba Linda, supra,* 13 Cal.App.4th at p. 1046.) Blumhorst sued as an individual, not on behalf of an organization of victims of unlawful discrimination. In view of all of these

considerations, it would be error to apply a relaxed standing rule on the theory Blumhorst's complaint fell under the relaxed rules of public interest litigation.

## DISPOSITION

The judgment is affirmed.[7] Costs on appeal are awarded to respondents.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 27, 2005.

---

[7] Since we affirm the judgment on the ground of lack of standing, we do not address the other contentions raised by Blumhorst.