Opinion
COOPERMAN, P. J.
Statement of the Case
On April 4, 1983, plaintiff filed her complaint in the Los Angeles Municipal Court seeking damages for alleged wrongful eviction from an apartment building owned by defendant.
The first and second causes of action of the complaint generally sounded in fraud. The third cause of action of the complaint alleged that defendant had violated the Rent Stabilization Ordinance of the City of Los Angeles (hereafter Rent Stabilization Ordinance) by falsely representing that he needed possession of plaintiff’s apartment unit for occupancy by his mother.
On March 14, 1985, the case came on for trial before the Honorable Richard A. Paez.
On May 13, 1985, the court entered judgment in favor of plaintiff in the sum of $5,856 in compensatory damages, and in the sum of $2,000 in punitive damages.
*Supp. 11 On June 4, 1985, defendant filed a timely notice of appeal from the foregoing judgment.
Statement of Facts
In July 1982, plaintiff resided at 1411 North Martel Avenue, Los Angeles, California, occupying apartment No. 8. Plaintiff resided in the foregoing premises pursuant to a month-to-month rental agreement with defendant, at the rate of $346.17 per month. Defendant was the owner and lessor of the apartment building at bench. As of July 1982, plaintiff had occupied apartment No. 8 for approximately eight to ten years.
On July 24, 1982, defendant served plaintiff with a 30-day notice to quit informing plaintiff that her tenancy would terminate on August 31, 1982. Along with the 30-day notice, defendant served plaintiff with a rent stabilization ordinance declaration, on a form issued by the City of Los Angeles, stating that he sought possession of plaintiff’s rental unit for use and occupancy by Pnina Leff, defendant’s mother.
Plaintiff subsequently vacated the rental unit, pursuant to the foregoing notice, during the first week in September 1982. Although plaintiff had a doubt that defendant truly intended to have his mother occupy her rental unit, plaintiff vacated the apartment because she accepted defendant’s representation. At no time, however, did plaintiff and defendant discuss the circumstances surrounding defendant’s need for the apartment.
Plaintiff attempted to find another 2-bedroom apartment, in the neighborhood, but she could not afford the then existing rents in the amounts of-$450 to $500. Plaintiff ultimately leased a one-bedroom apartment on Harvard Avenue for $350 per month. The new apartment was approximately four or five miles east of the Martel Avenue apartment. Plaintiff signed a one-year lease for the new apartment. In view of the fact that the Harvard Avenue apartment was smaller than the two-bedroom apartment vacated by plaintiff, she was not able to use all of her furniture and personal possessions. As a result, plaintiff had to store part of her furniture and other personal items in a self-storage facility for the sum of $25 per month.
After vacating defendant’s rental unit, plaintiff drove by defendant’s apartment building to check on whether defendant’s mother had moved into her former apartment. In mid-October 1982, plaintiff saw a “for rent” sign posted on the building, advertising a two-bedroom apartment.
Defendant’s apartment building contained two 2-bedroom apartments. The “for rent” sign did not identify which two-bedroom apartment was for *Supp. 12 rent. Although there was some conflict in the evidence, the court found that during the time that the sign was posted, plaintiff’s former apartment was the only vacant two-bedroom apartment. The court found that the other two-bedroom apartment was occupied by two young women.
At plaintiff’s request, Mr. Luis Silva, a friend of plaintiff’s, contacted defendant regarding the “for rent” sign. Although there was some conflict in the evidence, the court found that defendant showed Mr. Silva apartment No. 8, plaintiff’s former apartment, and informed him that the rent was $565 per month. The court further found that defendant did not inform Mr. Silva that apartment No. 8 was not for rent nor did he make any reference to unit No. 4, the other two-bedroom apartment.
Although plaintiff learned that defendant’s mother had not moved into her former rental unit and that defendant was attempting to rent her former apartment, plaintiff never contacted defendant to request that she be allowed to move back into her former apartment. The court found that plaintiff did not make such a request because she had executed a one-year lease for the Harvard Avenue apartment. Similiarly, defendant did not make any attempt to contact plaintiff regarding the availability of her former apartment.
During the eight to ten years that plaintiff had rented from defendant, there were never any problems between plaintiff and defendant. Moreover, defendant never attempted to evict plaintiff prior to July 1982, nor did he ever attempt to increase plaintiff’s rent beyond the limits imposed by the Los Angeles Rent Stabilization Ordinance.
The court found that although defendant had attempted to rent plaintiff’s former apartment, it remained vacant until sometime in April 1983. At that time, defendant rented the apartment for the same rent that plaintiff had paid at the time of her eviction, namely, $346.17 per month.
Defendant testified that in September 1983, approximately one year after plaintiff vacated her apartment, the tenant who succeeded plaintiff in apartment No. 8 voluntarily vacated the apartment. Defendant then testified that in October 1983, apartment No. 8 was relet to another tenant at the rental rate of $425 per month. Defendant stated that by reason of the fact that the tenant who had succeeded plaintiff had voluntarily vacated the premises, there was no restriction on the rental that he could charge for occupancy of apartment No. 8.
In addition, the trial judge made the following specific findings: (a) At no time did defendant’s mother ever occupy apartment No. 8; (b) the fair *Supp. 13 market rental value of apartment No. 8, in 1982, was $565 per month; and (c) had defendant not evicted plaintiff, it is reasonably certain that plaintiff would have remained as a tenant in defendant’s apartment building for an additional two years.
Legal Conclusions of the Trial Court
In a statement of decision filed by the trial court on May 13, 1985, the trial judge held that the foregoing material facts supported relief on the basis of plaintiff’s first and third causes of action. Plaintiff’s first cause of action was for fraudulent misrepresentation on the part of defendant. The court held that defendant had intentionally misrepresented his true intentions regarding his need for plaintiff’s apartment. The court further held that plaintiff justifiably relied upon defendant’s misrepresentation, to her detriment, and that accordingly plaintiff was entitled to an award of damages for her losses on the first cause of action.
In plaintiff’s third cause of action, plaintiff alleged that in evicting plaintiff, defendant had violated the statutory duty imposed by the Rent Stabilization Ordinance, Los Angeles Municipal Code section 151.09 A 8, to act in good faith. The trial judge stated: “Applying the ... meaning of good faith [citing Bumgarner v. Orton (1944) 63 Cal.App.2d Supp. 841, 844] to the material facts of this case, leads the court to conclude that defendant did not act in good faith in evicting plaintiff. As a result of defendant’s action, plaintiff sustained damages and is therefore entitled to monetary compensation.”
Contentions ón Appeal
Defendant makes the following contentions on appeal: 1. No valid civil cause of action for damages exists for violation of the Rent Stabilization Ordinance (Los Angeles Mun. Code, § 151.00 et seq.);
2. There is no substantial evidence to support the determination of the trial court that defendant violated the Rent Stabilization Ordinance;
3. There is no substantial evidence to support the determination of the trial court that defendant committed common law fraud;
4. Plaintiff is estopped to claim damages, and also failed to take any steps to mitigate damages; and
5. There is no substantial evidence to establish that plaintiff sustained any damages.
*Supp. 14 Discussion
1.
Initially, we must determine whether a private cause of action for damages exists when a tenancy is terminated as a result of a violation of the Rent Stabilization Ordinance.[1] We conclude that it does.
It is well settled in California that “[violation of a statute embodying a public policy is generally actionable even though no specific remedy is provided in the statute; any injured member of the public for whose benefit the statute was enacted may bring an action.” (Wetherton v. Growers Farm Labor Assn. (1969) 275 Cal.App.2d 168, 174 [79 Cal.Rptr. 543]; Czap v. Credit Bureau of Santa Clara Valley (1970) 7 Cal.App.3d 1, 6 [86 Cal.Rptr. 417]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 7, pp. 2307-2308.) The above rule is applicable as well to city or county ordinances. (Sapiro v. Frisbie (1928) 93 Cal.App. 299, 305-306, 309 [270 P.2d 280].)
The effect of such statutes, in essence, is to create a duty or standard of conduct, the breach of which, where it causes injury, gives rise to liability in tort. The case of Middlesex Ins. Co. v. Mann (1981) 124 Cal.App.3d 558 [177 Cal.Rptr. 495], involved a breach of fiduciary duties under Insurance Code sections 1733 and 1734. The Court of Appeal found a civil action to lie although the sections did not specify a civil remedy. The court announced that “the appropriate rule is the general rule stated in Restatement Second of Torts, section 874A: ‘When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.’ ” (Id., at p. 570.)[2]
The avowed purpose of the Rent Stabilization Ordinance is to “reduce the rate of rent increases in the city, along with the concomitant hardships and displacements, while providing landlords with a just and *Supp. 15 reasonable return from their rental.” (Zimmerman v. Stotter (1984) 160 Cal.App.3d 1067, 1078 [207 Cal.Rptr. 108]; § 151.01.)
The Rent Stabilization Ordinance limits the grounds on which the landlord may recover possession of a rental unit. Section 151.09 A 8, with which we are concerned in this case, provides: “A landlord may bring an action to recover possession of a rental unit only upon one of the following grounds: . . . [ft| 8. The landlord seeks in good faith to recover possession of the rental unit for use and occupancy by the landlord, or the landlord’s spouse, children, or parents, provided the landlord is a natural person, or for a resident manager.”
Thus, the section establishes a standard of care or duty owed by the landlord to the tenant—i.e., that the landlord act in good faith in evicting under this section.
Further, section 151.09 C2 requires a landlord utilizing section 151.09 A 8 as a ground for eviction to file a declaration with the Community Development Department of the City of Los Angeles setting forth, inter alia, the name and relationship of the family member to be moved into the rental unit. A landlord who willfully or knowingly with the intent to deceive makes a false statement in such a declaration, or fails to disclose a material fact, is subject to misdemeanor sanctions under section 151.10B.
The fact that section 151.10B provides a criminal penalty for violation of the ordinance does not necessarily preclude a private cause of action. “[Violations of public policy statutes ... have been declared justiciable in civil actions. This is true notwithstanding that criminal sanctions are provided.” (Montalvo v. Zamora (1970) 7 Cal.App.3d 69, 76 [86 Cal.Rptr. 401]; see also, United Farm Workers of America v. Superior Court (1975) 47 Cal.App.3d 334, 343 [120 Cal.Rptr. 904]; 4 Witkin, op. cit. supra, p. 2307.)
We specifically note that the Court of Appeal in Zimmerman, supra, 160 Cal.App.3d 1067, stated: “The only private remedy specifically authorized by the ordinance is one in which if the landlord demands, accepts or retains excessive rent, the tenant may then bring an action for treble the excess. (§ 151.10, subpar. A.) However, we believe the Legislature did not intend to create a blanket preclusion of all possible remedies.” (At p. 1077, fn. 11.)[3]
There is nothing in the language of the Rent Stabilization Ordinance itself to suggest that the city council intended that the provision of a crimi *Supp. 16 nal penalty for a false declaration filed with the community development department relative to eviction to place the landlord, or a member of the landlord’s family, in occupancy, was exclusive.
Similarly, although section 151.09 E provides that “[i]n any action by a landlord to recover possession of a rental unit, the tenant may raise as an affirmative defense any of the grounds set forth in Subsections A, B, C and D of this Section,” and that a violation of A, B or D, shall not constitute a misdemeanor, there is no indication that the city council intended such an affirmative defense to be the sole remedy available to tenants. In addition, the provision of an affirmative defense does not necessarily act as a bar to the maintenance of a private cause of action for damages. (Aweeka v. Bonds (1971) 20 Cal.App.3d 278 [97 Cal.Rptr. 650], cited with approval in Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 175 [164 Cal.Rptr. 839, 9 A.L.R.4th 314].)
Clearly, allowing the tenant who has been evicted in bad faith to sue for damages would promote the purposes of the ordinance by deterring landlords from misusing section 151.09 A 8 to gain possession of rented premises. Moreover, it would be unreasonable to limit a tenant who has been served with a notice to quit under section 151.09 A 8 to “staying and fighting,” raising the landlord’s bad faith as an affirmative defense in the action for unlawful detainer. It is obvious that objective evidence of bad faith on the part of the landlord may not come to light until after the tenant vacates the rental unit. (Gonzales v. Gem Properties, Inc. (1974) 37 Cal.App.3d 1029, 1036 [112 Cal.Rptr. 884]; Zimmerman v. Stotter, supra, 160 Cal.App.3d at p. 1076, fn. 7.)
Finally, we note that the City Attorney of the City of Los Angeles, on behalf of the City of Los Angeles as amicus curiae, acknowledges that “[a]t the time that the Rent Stabilization Ordinance was enacted in 1979, the right of a private cause of action for a violation of a statutory duty or standard was well established in California, and it can be assumed that the City Council was aware of that fact. ...”
Accordingly, we conclude that a tenant who sustains damages as a result of a landlord’s violation of the standard of “good faith” in an eviction initiated under the provisions of section 151.09 A 8 of the Rent Stabilization Ordinance may, under the circumstances at bench, maintain a civil cause of action for recovery of such damages. Such a tenant is a member of the class for whose benefit the ordinance was enacted, and implication of a private remedy is clearly consistent with the purposes of the ordinance.
*Supp. 17 2.
We next address defendant’s contention that there is no substantial evidence that defendant violated the Rent Stabilization Ordinance. We disagree.
The following evidence was introduced at trial: (1) In September 1982, plaintiff, in reliance on a thirty-day notice to quit served by defendant indicating that the premises were needed by defendant’s mother, vacated a two-bedroom apartment—one of two such apartments in the building—for which she paid $346.17 rent per month. (2) In mid-October 1982, a “for rent” sign advertised a two-bedroom apartment in the building. (3) Plaintiff observed the occupants of the only other two-bedroom apartment on the premises. (4) Louis Silva, a friend of plaintiff’s, inquired about renting the advertised apartment in October 1982; plaintiff’s apartment was shown to Silva, who was told the rent was $565.00 per month.[4]
While it is true that the settled statement sets forth testimony by defendant, and on his behalf, which conflicts with the findings of the trial court as hereinabove set out in the statement of facts, the trial court, after considering the witnesses’ credibility and the state of the evidence presented, expressly determined in the notice of intended decision that the evidence presented by plaintiff was “far more credible and persuasive” than that presented by defendant.
“When a trial court’s factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion. ” (Bowers v. Bernards (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925], italics in original.) As a reviewing court we will not retry the facts of the case; the determination of credibility is the province solely of the trial court. (People v. French (1978) 77 Cal.App.3d 511, 523 [143 Cal.Rptr. 782].)
Accordingly, defendant’s contention that the finding of the trial court that defendant violated section 151.09 A 8 is not supported by substantial evidence, is without merit.
*Supp. 18 3.
Defendant similarly contends that there is no substantial evidence establishing that defendant committed common law fraud.[5] Specifically, defendant asserts that plaintiff did not believe defendant’s statement that his mother was to occupy the apartment vacated by plaintiff. Therefore, he argues, plaintiff did not rely on the 30-day notice to move and, thus, the necessary element of reliance was not proved. Again, we disagree.
Based upon the testimony of plaintiff, the settled statement states “ . . . Castillo relied upon the Notice and vacated the apartment.” Similarly, the trial judge found, as set out in the statement of decision, that “plaintiff vacated the apartment because she believed defendant’s representation.”
In the light of the foregoing, we must reject defendant’s contention as to a lack of substantial evidence on the issue of plaintiff’s reliance on defendant’s representations.
4.
Defendant next contends that plaintiff is estopped from making any claim against defendant in the case at bench, in that plaintiff intentionally waited until defendant had rented the apartment to another before filing suit, thus inducing defendant to believe that plaintiff was no longer interested in the apartment.
The contention is specious and contrary to defendant’s position at trial that defendant intended that, after plaintiff vacated, his mother would move into the apartment as soon as her health and her other activities allowed. It is also contrary to Ms. Leff’s testimony that defendant kept the premises off the rental market from September of 1982 to April of 1983 pending Ms. Leff’s decision to move in. Thus, any request by plaintiff to relet the apartment would have been unavailing, and would have required her to break her one-year lease of the Harvard Street apartment that she had acquired as a result of the eviction by defendant. Moreover, the testimony in the trial court indicated that plaintiff learned from her friend, Mr. Silva, that the apartment was no longer renting for $346 per month, but that defendant had stated to Silva that the rent of the apartment vacated by plaintiff was in the amount of $565 per month.
*Supp. 19 We hold that defendant’s contention that estoppel arises in his favor, by virtue of the foregoing facts, is without merit.
In the same vein, defendant contends that plaintiff failed to take any steps to mitigate her damages. Defendant argues that plaintiff made no attempt to contact defendant and recover the apartment but, instead, waited until defendant had relet the premises in April of 1983 to file her complaint seeking damages. This contention must be rejected.
The injured party has the “. . . active duty to use reasonable care and diligence to protect himself and minimize the loss. And if, by his own neglect, the damages are unnecessarily enhanced, he cannot recover the excess.” (4 Witkin, Summary Cal. Law, supra, Torts, § 870, p. 3158.)
However, the record here discloses that after receiving the notice to quit, and prior to vacating the Martel Street apartment, plaintiff looked for a similar two-bedroom apartment in the area, but was unsuccessful in finding one. She then rented a smaller apartment, a one-bedroom apartment, on Harvard Street, and was bound by a one-year lease, until August 1983. Such facts countervail defendant’s contention that plaintiff took no steps to- mitigate her damages. Further, the Harvard Street apartment was smaller than the vacated apartment, and at least partially furnished, necessitating plaintiff’s storage of some of her belongings. On these facts, it cannot be said that plaintiff’s damages were enhanced.
5.
Defendant’s final contention is that there is no substantial evidence that plaintiff sustained any damages as a result of the eviction.
“The damages recoverable for wrongful eviction, actual or constructive, include whatever amounts are necessary to compensate tenant for detriment proximately caused by the eviction or likely to result therefrom [citation]. The measure of damages, as a general rule, is the value of the term, less the rent reserved [citation].” (Stoiber v. Honeychuck (1980) 101 Cal.App.3d 903, 926 [162 Cal.Rptr. 194]; see also, 42 Cal.Jur.3d, Landlord and Tenant, § 132, pp. 155-156.) When malice is proved, punitive damages may also be recovered. (See Tooke v. Allen (1948) 85 Cal.App.2d 230 [192 P.2d 804].) (See also, Civ. Code, § 3333 et seq.)
On the basis of evidence presented at trial, the trial court determined that plaintiff would have continued the tenancy with defendant for an additional two years beyond the date of her eviction. This determination is supported by plaintiff’s testimony that subsequent to her eviction in *Supp. 20 September 1982, plaintiff secured a replacement rental for two years, and in September 1984, moved in with her daughter.
“In tort actions damages are normally awarded for the purpose of compensating the plaintiff for injury suffered, i.e., restoring him as nearly as possible to his former position or giving him some pecuniary equivalent.” (4 Witkin, supra, § 842, p. 3137, italics in original.)
In keeping with the foregoing findings and principles pertaining to compensatory damages, the court awarded to plaintiff the sum of $5,856, representing, in addition to storage costs in the total sum of $600, the difference between the amount that plaintiff was paying for her rent-controlled apartment in the amount of $346 per month and the market rental value of said premises, which the court determined to be $565 per month. The trial court determined that plaintiff’s loss was $219 per month for the two-year period that the court found that plaintiff would have occupied the premises.
In the present case, the trial court had before it evidence that defendant placed a rental value of $565 per month on the subject premises. Defendant represented to witness Louis Silva that the apartment would be rented for that sum.[6]
 Evidence of property value may be competently established by testimony of an owner. (Evid. Code, § 813, subd. (a)(2).) However, as contended by counsel for appellant, it is well settled that the measure of rental value of real property is its fair rental value in the open market when offered under ordinary circumstances. The market rental value for an apartment is the price at which the landlord is willing to rent the premises and which a prospective tenant is willing to pay. (See Edgar v. Bank of America (1942) 50 Cal.App.2d 827, 835.)
The uncontradicted evidence at trial was that defendant relet plaintiff’s apartment to a new tenant at the rental rate of $346 for the period April 1, 1983, to September 1983, when the tenant who succeeded plaintiff voluntarily vacated the apartment. This is the same amount of rent that had been paid by plaintiff.
In October 1983, approximately one year after plaintiff had vacated the premises, the apartment was relet to another tenant at the rental rate of $425 per month. According to the settled statement, “Friedman stated that [since] the previous tenant had voluntarily vacated the premises, there was *Supp. 21 no restriction on the rental that he could charge for occupancy of the apartment.”
Substantial evidence supports the determination by the trial judge that “... it is reasonably certain that plaintiff would have remained as a tenant in defendant’s apartment for an additional two years.” Further, this court has no quarrel with the trial judge’s determination that plaintiff’s loss can best be measured by the difference between market value and the rent-controlled rate of the subject premises.
However, we hold that the fact that defendant hoped to rent the subject premises for the sum of $565 per month does not constitute substantial evidence of the market rental value of said premises. Our holding in this regard is reinforced by the fact that the highest rent received by defendant during the two-year period following plaintiff’s eviction, according to the record herein, was in the amount of $425 per month.
Accordingly, although we affirm the judgment of the trial court on the issue of defendant’s liability for damages in favor of plaintiff, we must reverse the trial court’s finding as to damages and remand for further proceedings in which the trial court shall make a specific finding as to the market value of rent on the subject premises for the period of two years from and after the date on which plaintiff vacated such premises, in conformity with the views expressed herein. In the event that the trial court finds that plaintiff is entitled to compensatory damages, it may then consider the issue of punitive damages should plaintiff, in the court’s discretion, be entitled thereto. Each side shall bear its own costs on appeal.
Soven, J., and Newman, J., concurred.

 The Rent Stabilization Ordinance is codified in the Los Angeles Municipal Code, commencing with section 151.00. A true copy of relevant Rent Stabilization Ordinance provisions, as they existed during July 1982, is attached to this opinion.
Hereafter all section references are to the Los Angeles Municipal Code unless otherwise specified.

 See also, Laczko v. Jules Meyers, Inc. (1969) 276 Cal.App.2d 293, 295 [80 Cal.Rptr. 798] (breach of statutory duty under Veh. Code, § 28051, prohibiting rollbacks of odometers, constituted actionable tort).

 In Zimmerman, the court also stated: “Section 151.10 [B] merely sets forth the prevailing criminal penalties and does not preclude or limit all incidental private causes of action.” (At p. 1076 fn. 8, italics in original.)

 It is undisputed that a rental unit is not decontrolled when premises are vacated for owner or owner’s family occupancy under the Rent Stabilization Ordinance.

 Defendant, although setting out in his brief the legal elements of a cause of action for common law fraud, does not argue the nonexistence of substantial evidence with respect to the elements of such a cause of action, otherthan plaintiff’s reliance on representations made by defendant.

 The trial court could properly disbelieve, as it did, defendant’s testimony that the “for rent’’ sign referred to apartment No. 4 rather than apartment No. 8, which had been vacated by plaintiff.