[No. B089620. Second Dist., Div. Two. Apr. 10, 1997.]

CRUSADER INSURANCE COMPANY, Plaintiff and Appellant, v. SCOTTSDALE INSURANCE COMPANY et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 5, 6 and 7.

### COUNSEL

Staitman, Snyder & Tannenbaum and Jack M. Staitman and Gerald P. Peters for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Richard A. Brown, Barry S. Landsberg, Brand W. Seiling, Greve, Clifford, Wengle & Paras, Lawrence A. Wengel, Irving H. Perluss, Thelen, Marrin, Johnson & Bridges, Gary L. Fontana, William F. Holbrook, Dorais & Wheat, Claude J. Dorais, Marilyn A. Monahan, Cooksey, Howard, Martin & Toolen, David Cooksey, McNitt, Schraner & Loeb, Roger L. McNitt, Robert K. Schraner, White & Case, John A. Sturgeon and Bryan A. Merryman for Defendants and Respondents.

### OPINION

**ZEBROWSKI, J.**—This case raises the question of the proper test for determining whether a regulatory statute creates a new private right to sue. Two competing approaches have been presented. The first is the "legislative intent approach." The legislative intent approach examines the wording of the statute, its legislative history, its statutory context and similar factors, and asks whether the Legislature intended to create a new private right to sue by enacting the statute. The second approach is the "Restatement approach." The Restatement approach follows the legislative intent approach in most respects. However, in a situation in which the Legislature simply never

contemplated the possible creation of a private right to sue, the Restatement approach deviates from the legislative intent approach. In this latter situation, the Restatement approach allows the court itself to create a new private right to sue, even if the Legislature never considered creation of such a right, if the court is of the opinion that a private right to sue is "appropriate" and "needed."

This case involves Insurance Code section 1763, which regulates the activities of surplus line brokers in California. The plaintiff is Crusader Insurance Company. Crusader is admitted to conduct the business of insurance in California. There are two categories of defendants: Some are surplus line brokers who have placed California risks with nonadmitted insurers; others are non-admitted insurers who have accepted such risks.[1]

Insurance Code section 1763 in summary provides that a surplus line broker must conduct a "diligent search" for an admitted insurer who will accept a risk before placing that risk with a nonadmitted insurer. The "diligent efforts" expended by the broker to find an admitted insurer must be set forth on a "standardized form" prescribed by the Insurance Commissioner. It is "prima facie evidence" that a "diligent search among admitted insurers" has been made if the "standardized form" establishes that "three admitted insurers that actually write the particular type of risk in this state have declined the risk." However, the Insurance Commissioner may review the adequacy of the broker's efforts and may make remedial orders notwithstanding the prima facie showing provided on the standardized form. The Insurance Commissioner is further authorized to "publish reasonable rules and regulations" with respect to surplus line transactions and to take disciplinary action for violations, which "may include any action authorized to be taken against a licensed person by" the Insurance Code.[2]

Crusader contends that defendant surplus line brokers have placed California risks with the nonadmitted insurer defendants without conducting the type of "diligent search" required by Insurance Code section 1763. Crusader, however, had no relationship or transaction with any defendant out of which any common law duty enforceable by Crusader could arise. Crusader therefore had no common law causes of action to allege, such as negligence, breach of contract or implied covenant, fraud, negligent misrepresentation,

---

[1] The named surplus line brokers are Transcal Associates, R.I.C. Insurance General Agency, Inc., and Canyon Pacific Wholesales Insurance Service, Inc. The named nonadmitted insurers are Scottsdale Insurance Company, Admiral Insurance Company, Western Heritage Insurance Company, and Illinois Insurance Exchange.

[2] The nonadmitted insurers are not regulated directly under Insurance Code section 1763. The statute applies directly only to the surplus line brokers. Crusader sues the nonadmitted insurer defendants as coconspirators and on related claims.

etc. Instead, Crusader's suit depends wholly upon the proposition that Insurance Code section 1763 gives Crusader (and hence every other admitted insurer in California) a new private right to sue on the claim that California risks have been placed on a surplus line basis without an adequately diligent search. Crusader's complaint sought $20 million, punitive damages, an injunction and other relief.

The trial court rejected Crusader's central proposition that Insurance Code section 1763 gives Crusader a new private right to sue, concluding instead that section 1763 authorizes regulatory remedies only. Inasmuch as Crusader had no claim against defendants other than their alleged violation of the "diligent search" requirements of Insurance Code section 1763 (i.e., no common law theories such as negligence, fraud, breach of contract, etc.), the trial court sustained defendants' demurrers without leave to amend and dismissed Crusader's action. This appeal followed.

1. *Summary of Decision.*

In the published portion of this decision, we will conclude that the Restatement approach is not valid in California to the extent that it deviates from the legislative intent approach. This determination will rest primarily upon California Supreme Court cases which regularly employ the legislative intent approach to resolve questions of whether a statute creates a private right to sue, and upon Code of Civil Procedure section 1858, which provides that a judge may not insert what has been omitted from a statute. We will then apply the legislative intent approach and conclude that the Legislature had no intent that Insurance Code section 1763 would create a new private right to sue. In the unpublished portion of this decision, we will deal with related issues of conspiracy, unfair competition and interference with prospective economic advantage.

In concluding that legislative intent determines whether a statute creates a new private right to sue, and that a judge may not engraft a new private right to sue onto a statute when the Legislature had no such intention, we will distinguish an allied, but significantly distinct, concept. This latter concept involves the use of statutes to establish the elements of common law causes of action. The use of statutes as evidence of the standard of care in a negligence action is a common example. In such a case, the statute does not create a new private right to sue. The statute instead serves the subsidiary function of providing evidence of an element of a preexisting common law cause of action. This use of statutes to establish elements of preexisting common law causes of action presents an issue quite distinct from the issue of whether a regulatory statute creates a wholly new private right to sue.

In the instant case, Crusader would have no claim against the defendants in the absence of Insurance Code section 1763. The case presented by Crusader is therefore different from a case in which a statute is offered to establish an element of a preexisting common law cause of action. Case law, however, has often failed to distinguish clearly between the issue of whether a statute creates a wholly new private right to sue, and the use of a statute to establish an element of a preexisting common law cause of action. The failure to distinguish between these two significantly different questions has confused the case law regarding the proper test for determining whether a regulatory statute creates a wholly new right to sue. In concluding that the legislative intent approach answers the question of whether section 1763 creates a new private right to sue, we will therefore distinguish cases which concern the quite different question of whether a statute may be used to establish an element of a common law cause of action.

2. *The Restatement Approach.*

a. *Section 874A.*

▉ Crusader contends that the question of whether Insurance Code section 1763 gives Crusader a private right to sue should be decided according to the broad considerations set forth in the Restatement Second of Torts, section 874A and its commentary. Section 874A states: "When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the *court* may, if *it* determines that the remedy is *appropriate* in furtherance of the purpose of the legislation and *needed* to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action." (Italics added).

b. *Comparison between the Restatement approach and the legislative intent approach.*

The commentary to Restatement Second of Torts section 874A identifies four categories of cases involving the question of whether a statute creates a new private right to sue: (1) when the statute expressly creates a private right to sue, (2) when the court finds that the Legislature "did actually intend for civil liability to be imposed," even though the statute may not expressly so state, (3) when the court finds that the Legislature affirmatively "intended that there be no civil liability," and (4) when the Legislature did not contemplate the issue and therefore had no legislative intent one way or the other. (Rest.2d Torts, § 874A, coms. b, c & d, pp. 301-303.)

In categories one, two and three, the Restatement approach is consistent with the legislative intent approach: The court simply determines and then abides by the legislative intent. Many regulatory statutes, however, fall into the fourth category, in which the Legislature does not manifest any intent regarding a private right to sue, and in which the Legislature may simply not have considered the subject. Regulatory statutes which make no express mention of a private right to sue often fall into this fourth category. It is with respect to this common situation that the Restatement approach and the legislative intent approach diverge.

If the Legislature simply did not consider the possibility of creating a new private right to sue, then the Legislature cannot have had an intent to create a new private right to sue. Hence—pursuant to the legislative intent test—a statute cannot be interpreted as creating a private right to sue. In such a circumstance, the proper course for a party who believes that there should be a private right to sue is to bring the matter to the attention of the Legislature so that the Legislature can in fact consider whether it should, or should not, create such a right. The Restatement, by contrast, takes quite a different approach.

c. *The divergence between the Restatement approach and the legislative intent approach.*

According to the Restatement, if a court finds that the Legislature "had no specific intent in fact on the issue" of whether to create a private right to sue—as is the case whenever the Legislature simply did not consider the question—the court must "decide this question on its own." According to the Restatement, deciding this question "involves looking for the policy behind the legislative provision . . . and . . . determining the most appropriate way to carry it out . . . . [¶] *This process requires policy decisions by the court, and it should be aware of them and face them candidly. In these cases, it is the court itself that is according the civil remedy to the injured party . . . what is involved is judicial rather than legislative modification of the existing law* . . . judicial tradition gives [the court] the authority to do this under appropriate circumstances. The court has discretion and it must be careful to exercise that discretion cautiously and soundly." (Rest.2d Torts, § 874A, com. d, p. 303, italics added.)

In deciding how to exercise this postulated discretion to decree a "judicial . . . modification" of a statute, the Restatement advises that courts should engage in a series of subjective inquiries and form a series of subjective opinions. According to the Restatement, the court should decide whether a private right to sue is "appropriate" and "needed," examine the "adequacy of

existing remedies," decide whether the existing remedies are "sufficient," consider which remedies would be "better," decide whether injecting the private interests of a plaintiff is "good or bad in regard to the particular legislation," examine the staffing levels and degree of "apathy" in responsible regulatory agencies, consider whether the penalty of a civil action would be "too heavy" or "too erratic," determine whether court-created remedies will "enable the court to exercise tighter control," evaluate the "significance of the purpose that the legislative body is seeking to effectuate," decide how "important" the Legislature's purpose is and whether it has been "adequately protected," determine "[t]he extent to which the tort action will aid or supplement or interfere with existing remedies and other means of enforcement," and a host of similar quasi-legislative considerations. (Rest.2d Torts, § 874A & com. h, p. 309.) The Restatement thus postulates that even though the Legislature had no intent to do so, the Legislature may nevertheless have unintentionally and inadvertently created a new right to sue by enacting a statute, depending upon how a court later evaluates the factors noted.

In this fourth category of cases, the legislative intent approach and the Restatement approach can therefore yield opposite results. A legislative intent analysis would lead simply to the conclusion that the Legislature cannot have intended to create something that it never considered. In the same situation, the Restatement approach would allow the court to use a statute to create a new private right to sue if the court found it "appropriate" and "needed" in light of the considerations summarized above.

d. *Importation of the Restatement approach into California law by the Middlesex case.*

Crusader relies on *Middlesex Ins. Co.* v. *Mann* (1981) 124 Cal.App.3d 558 [177 Cal.Rptr. 495] to contend that section 874A of the Restatement Second of Torts states the law in California. In *Middlesex*, defendant Mann was selling insurance policies written by Middlesex and remitting the net premiums to Middlesex's agent. Mann allegedly failed to remit the net premiums. Middlesex sued Mann on common law and equitable theories of breach of fiduciary duty, accounting, and imposition of a constructive trust. (*Middlesex, supra*, 124 Cal.App.3d 558, 564.) Judgment went for Mann, and Middlesex appealed.

One issue on appeal was whether Mann owed Middlesex a "fiduciary" duty with respect to the net premiums received by Mann and payable to Middlesex. Mann was allegedly entrusted with funds which constituted the property of Middlesex, and allegedly either misappropriated them or lost them through lack of care. It therefore appears that Middlesex had ample

common law claims against Mann. (See, e.g., 1 Witkin, Summary of Cal. Law (9th ed. 1988) Contracts, § 791, p. 715 [breach of contract]; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 610, p. 707 [conversion]; 6 Witkin, Summary of Cal. Law, *supra*, Torts, § 729, p. 56 [negligence].) However, Middlesex had cited Insurance Code section 1733, which provides that an insurance agent receives premiums in a fiduciary capacity, to establish Mann's duty of care. (Cf. Evid. Code, § 669 [codifying the doctrine of negligence per se]; 6 Witkin, Summary of California Law, *supra*, Torts, § 819, p. 171 [negligence per se]). In dealing with the effect of section 1733, the *Middlesex* opinion, in one scant paragraph out of seventeen pages, states that ". . . the appropriate rule is the general rule stated in Restatement Second of Torts, section 874A." *Middlesex* then summarily finds that "[a] civil remedy against [insurance agents] responsible for the misapplication or dissipation of premium payments will best effectuate the purpose of" section 1733, and concluded that ". . . a civil action will lie for damages proximately resulting from [an insurance agent's] breach of the fiduciary obligations imposed by" section 1733. (*Middlesex Ins. Co.* v. *Mann, supra,* 124 Cal.App.3d 558, 570.)

The Restatement Second of Torts section 874A, thus has ambiguous beginnings in California jurisprudence. The substance of the decision in *Middlesex* was simply that the statute there involved could be used in establishing the standard of care or implied obligation elements of what appeared to be a common law negligence or breach of contract case styled as breach of fiduciary duty.[3] *Middlesex* did not use section 874A, as Crusader tries to use it here, to create a wholly new cause of action out of a regulatory statute.

*Middlesex* cited two cases as support for its conclusion that Restatement Second of Torts section 874A states the "appropriate rule" in California. One was *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 763 [91 Cal.Rptr. 745, 478 P.2d 465]. *Haft* involved a drowning death in a hotel pool that failed to meet safety standards. *Haft* found the hotel negligent. The statutory standards involved in *Haft* were invoked simply to set the standard of care in a common law negligence action. The other case cited by *Middlesex* was *Wetherton* v. *Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168, 174 [79 Cal.Rptr. 543], questioned and overruled on other grounds in *Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-521 [28 Cal.Rptr.2d 475, 869 P.2d 454]. In *Wetherton*, defendants allegedly coerced plaintiffs not to join a labor union. Labor Code sections 922 and 923

---

[3]Many of the "Illustrations" in the comments to Restatement Second of Torts section 874A are also situations in which a statute is used to establish an element of a common law claim, especially duty of care in a negligence case.

declared such coercion to be a misdemeanor. The question was whether these penal code provisions also supported a private right to sue for money damages. *Wetherton* stated, expansively but simply, and without elaboration, that "[v]iolation of a statute embodying a public policy is generally actionable even though no specific remedy is provided in the statute; any injured member of the public for whose benefit the statute was enacted may bring an action." Neither *Haft* nor *Wetherton* mentions the Restatement.

e. *Other cases applying Restatement section 874A.*

The other case principally relied upon by Crusader is *Kentucky Cent. Life Ins. Co.* v. *LeDuc* (1992 N.D.Cal.) 814 F.Supp. 832, 837. In *Kentucky Central,* insurer Kentucky Central alleged that insurance agents had misrepresented facts to policyholders to induce them to change their policies from Kentucky Central to another carrier. The court ruled that Kentucky Central had stated common law claims for interference with contractual relations and interference with economic advantage. In addition, however, Kentucky Central had alleged that the insurance agents had violated Insurance Code section 781, which prohibits misrepresentation of facts to policyholders to induce them to change insurers. In *Kentucky Central,* the federal district court cited *Middlesex* for the proposition that "courts may imply a right of action from a statute" pursuant to section 874A of the Restatement Second of Torts, and found that section 781 creates a private right to sue. The practical significance of this abbreviated federal trial court ruling is unclear inasmuch as plaintiff was already proceeding on common law theories based upon the same allegations and covering the same damages, and inasmuch as it is presumed in California that a party has failed to use due care if that party violates a statute. (Evid. Code, § 669).

Also citing *Middlesex* for the proposition that Restatement Second of Torts section 874A states the law in California is *Castillo* v. *Friedman* (1987) 197 Cal.App.3d Supp. 6 [243 Cal.Rptr. 206]. *Castillo* involved a suit by a tenant against a landlord for common law fraud. Also advanced, however, was a contention that the landlord had violated a rent control ordinance. The question was whether the tenant could sue for violation of the ordinance. Again, the practical significance of the question is unclear inasmuch as plaintiff had successfully pursued a common law fraud cause of action on the same allegations for the same damages. In stating that the ordinance created a private right to sue, the Appellate Department of the Los Angeles Superior Court cited *Middlesex* and applied the Restatement.

### 3. *The Legislative Intent Approach.*

#### a. *The Supreme Court applies the legislative intent approach and has not adopted the Restatement approach.*

The leading case on the proper analysis for determining whether a regulatory statute creates a private right to sue is *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58]. In *Moradi-Shalal*, the Supreme Court overruled its earlier decision in *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329]. In *Royal Globe*, the court had ruled that certain provisions of the Insurance Code, which provided only regulatory remedies, nevertheless created a private right to sue. In so holding, the *Royal Globe* majority examined the language and purpose of the statutory provisions, considered the legislative history, and expressly applied a legislative intent analysis. In dissent, three justices argued that the majority had erred in its analysis of legislative intent and, also applying a legislative intent analysis, concluded that the statutes there in question were not intended to create a new private right to sue. Neither the majority nor the dissenting opinion mentioned the Restatement. Neither suggested that a Restatement-style "judicial modification" of the statute would be proper, or that any analysis other than a search for legislative intent was proper.

In reversing *Royal Globe* in *Moradi-Shalal*, the Supreme Court first reviewed the bases for the *Royal Globe* decision and examined decisions on similar issues from sister states. The *Moradi-Shalal* court also examined scholarly criticism and noted that the *Royal Globe* decision had "forced the lower courts to make quasi-legislative decisions." Much of this discussion was directed to the issue of stare decisis and whether *Royal Globe* should be revisited. On the subject of whether the statute created a private right to sue, the *Moradi-Shalal* court applied a legislative intent analysis and held that "thus far the Legislature has not manifested an intent to create such a private right of action." (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies*, *supra*, 46 Cal.3d 287, 305.) Since the Legislature had not manifested an intent to create a private right to sue, *Moradi-Shalal* found that there was no private right to sue. In dissent, Justice Mosk (the author of the majority opinion in *Royal Globe*) argued only that the interpretation of legislative intent in *Royal Globe* was correct. Neither the majority nor the dissenting opinion in *Moradi-Shalal* mentioned the Restatement. Neither suggested that a Restatement-style "judicial modification" of the statute would be proper, or that any analysis other than a search for legislative intent was proper.

Both of these famous antagonists in California law, *Royal Globe* and *Moradi-Shalal,* thus expressly applied a legislative intent analysis. Although

*Royal Globe* has been criticized by some for applying the legislative intent approach in a style so free-form that it seems indistinguishable from the Restatement approach, not even *Royal Globe* itself expressly claimed to apply anything other than legislative intent analysis. The difference in outcome between *Royal Globe* and *Moradi-Shalal* was not due to admitted application of a different test in *Royal Globe*, but rather to the contrary understanding of legislative intent developed by *Moradi-Shalal* (and also by most other courts around the country which have considered the issue). Thus both *Royal Globe* and *Moradi-Shalal* are expressly in agreement that the legislative intent approach must be applied.

When *Moradi-Shalal* found that "thus far the Legislature has not manifested an intent to create such a private right of action," it placed the case in the fourth category discussed in the Restatement comments—cases in which no manifestation of legislative intent can be found on the subject of private right to sue because the Legislature did not consider the subject. *Moradi-Shalal* found that in this situation no private right of action has been created. By contrast, a court applying the Restatement approach in the same situation could itself "modify" the statute by creating a private right to sue if the court found it "appropriate" and "needed."

As the dissent stated in *Royal Globe*, if the Legislature had truly intended to create a private right to sue " 'one would reasonably have expected that the Legislature simply would have directly imposed such liability in clear, understandable, unmistakable terms, as it has done in numerous other statutes.' " *(Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, 295; see also *Schaefer* v. *Williams* (1993) 15 Cal.App.4th 1243, 1248 [19 Cal.Rptr.2d 212] [if the Legislature had intended to create a private right to sue, it surely would have done so by "clear and direct language," citing *Moradi-Shalal*].) *Moradi-Shalal* found that the points raised in the *Royal Globe* dissent "seem irrefutable," and reversed *Royal Globe* on that basis. *(Moradi-Shalal, supra,* 46 Cal.3d 287, 304; cf. *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1392 [241 Cal.Rptr. 67, 743 P.2d 1323] ["[a]bsent express language dictating otherwise, it will not be presumed that the Legislature intended to authorize an administrative agency" to award punitive damages]; and *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297] [had Legislature intended to exempt certain parties from reach of statute, it could readily have done so].) *Moradi-Shalal* further noted that "[t]he fact that neither the Legislative Analyst nor the Legislative Counsel observed that the new act created a private right of action is a strong indication the Legislature never intended to create such a right of action." *(Moradi-Shalal, supra,* 46 Cal.3d at p. 300; see also *Manufacturers Life Ins.*

*Co.* v. *Superior Court* (1995) 10 Cal.4th 257, 275 fn. 7 [41 Cal.Rptr.2d 220, 895 P.2d 56] [noting Legislative Analyst's statement that new act made no substantive change in existing law].) Thus when neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion.

In *Manufacturers Life Ins. Co.* v. *Superior Court, supra*, 10 Cal.4th 257, the Supreme Court rejected an argument that the decision in *Moradi-Shalal* means that insurers are not subject to *any* statutory liabilities. Instead, the court explained that *Moradi-Shalal* marked a return to "the fundamental principle" that a statute is "to be applied according to its terms." (*Manufacturers Life Ins. Co., supra*, 10 Cal.4th 257, 279.) Analyzing several statutes according to the legislative intent approach, the court determined that some statutes create civil liability, and others do not, all according to legislative intent. No mention was made of the Restatement.[4] (See also *Arriaga* v. *Loma Linda University* (1992) 10 Cal.App.4th 1556, 1564 [13 Cal.Rptr.2d 619] [standards in Rest.2d Torts, § 874A, p. 301 for determining whether statute creates a private right to sue have arguably been superseded by *Moradi-Shalal*]; cf. *Dyna-Med Inc.* v. *Fair Employment & Housing Com., supra*, 43 Cal.3d 1379, 1389 [Legislature did not intend sub silentio to empower commission to impose punitive damages].)

b. *The statutory "general rule" for construction of statutes.*

█ Code of Civil Procedure section 1858 states the "general rule" for construction of statutes as follows: "In the construction of a statute . . . the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (See *Manufacturers Life Ins. Co.* v. *Superior Court, supra*, 10 Cal.4th 257, 274 [citing § 1858 as one of the "[w]ell established canons of statutory construction" and describing it as a "mandate"] and *California Fed. Savings & Loan Assn.* v. *City of Los Angeles, supra*, 11 Cal.4th 342, 349 [office of judge neither to insert nor to omit].)

---

[4] Oral argument before the trial court in the instant case took place before the Supreme Court issued its opinion in *Manufacturers Life*, and while the now superseded Court of Appeal opinion in *Manufacturers Life* was outstanding. At that oral argument, Crusader argued that the Restatement approach was "alive and well in the State of California" inasmuch as it was "in part relied upon" in the then outstanding Court of Appeal opinion in *Manufacturers Life*. That now superseded Court of Appeal opinion did cite and in part rely upon the Restatement approach. Although the Supreme Court complimented the Court of Appeal for its "thorough and thoughtful review" of the issues presented, and affirmed its decision in the Supreme Court version of *Manufacturers Life*, the opinion of the Supreme Court hews strictly to the line of legislative intent analysis and omits any mention of the Restatement approach.

Section 1858 is itself an expression of legislative intent regarding the proper interpretation of the statutes enacted by the Legislature. Thus a court "is not authorized to insert qualifying provisions not included and may not rewrite the statute to conform to an assumed intention which does not appear from its language." (*In re Hoddinott* (1996) 12 Cal.4th 992, 1002 [50 Cal.Rptr.2d 706, 911 P.2d 1381].) ". . . [C]ourts are not at liberty to impute a particular intention to the Legislature when nothing in the language of the statute implies such an intention." (*Dunn-Edwards Corp.* v. *Bay Area Air Quality Management Dist.* (1992) 9 Cal.App.4th 644, 658 [11 Cal.Rptr.2d 850].)

 The Legislature can have legitimate reasons for not creating a private right to sue for violation of a regulatory statute. Entrusting enforcement of a regulatory statute solely to an administrator can serve at least three possible legislative objectives: expertise of enforcement, uniformity of enforcement, and avoidance of the burdens and possibly counterproductive effects that can be created when litigation is motivated by private objectives. The question of whether to create a private right to sue does implicate considerations of the kind discussed in the comments to Restatement Second of Torts section 874A. However, resolution of such issues "involves a difficult weighing of competing policies. Such a determination is more properly made by the Legislature." (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, 303-304.)

c. *The legislative intent approach does not abrogate common law rights.*

A mode of analysis which provides that a statute does not create a private right to sue except when the Legislature so intended does not diminish justice—it simply declines to distort a statute beyond the bounds of the legislative intent that created it. As *Moradi-Shalal* noted, available common law remedies are not limited by legislative intent analysis. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, 304-305.) As noted in *Industrial Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1093, 1096 [257 Cal.Rptr. 655], *Moradi-Shalal*'s determination that the statutes there involved created no private right to sue "usually does not matter" to an insured, because an insured may still pursue common law claims. (Accord, *Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833, 837 [262 Cal.Rptr. 106] [first party insureds in privity with insurer have common law claims]; see also Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 1996) ¶ 14:119 et seq., p. 14-27 [discussing breach of implied covenant and negligence].) Similarly, in the surplus line context, an insured suffering a loss because of improper conduct by a broker in placing surplus line coverage may pursue common law claims against that broker, which may include negligence, breach of contract, etc.

### 4. *An Admitted Insurer Has No Private Right to Sue Arising out of Insurance Code Section 1763.*

█ Crusader's first cause of action was stated expressly as a claim for "Violation of *Insurance Code* § 1763." Insurance Code section 1763 prescribes the procedures, noted above, that must be followed by surplus line brokers in soliciting and placing insurance with nonadmitted insurers. The core of these procedures is the "diligent search" requirement coupled with reporting requirements, supplemented by the Insurance Commissioner's authority to investigate and to order remedial action. Crusader argues that the surplus line brokers make no real effort to find admitted insurers who will cover a risk but instead seek three insurers who will decline coverage, and then place the insurance with nonadmitted insurers. Since the nonadmitted insurers need not comply with California regulatory requirements, their rates can allegedly be lower than California insurers and California consumers might not be as protected as they would be with admitted insurers. The Insurance Commissioner is presumably taking no action, or taking only action that is inadequate in Crusader's view, to enforce section 1763. The central issue, even assuming that all this is true, is whether an admitted carrier like Crusader has a private right to sue for alleged noncompliance with section 1763.

In *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, the Supreme Court held that an injured third party has no private right to sue the insured's carrier under Insurance Code section 790.03 or 790.09. Specifically, "[n]either section 790.03 nor section 790.09 was intended to create a private civil cause of action against an insurer that commits one of the various acts listed in section 790.03, subdivision (h)." (*Moradi-Shalal, supra,* 46 Cal.3d 287, 304.) Crusader argues that its claims are not barred by *Moradi-Shalal* simply because they do not arise out of claimed violation of section 790.03. Crusader relies instead on *Middlesex Ins. Co.* v. *Mann, supra,* 124 Cal.App.3d 558, and *Kentucky Cent. Life Ins. Co.* v. *LeDuc, supra,* 814 F.Supp. 832. *Middlesex* was decided before *Moradi-Shalal* and has never been followed by the Supreme Court.[5] *Kentucky Central* is a federal district court case that relies on *Middlesex. Moradi-Shalal* did involve different code sections than the instant case, and it is therefore true that *Moradi-Shalal* does not directly answer the specific question now posed. However, *Moradi-Shalal* did clarify the test by which the question must be answered. That test is the legislative intent test. No reason has been suggested why the legislative intent test would apply in *Moradi-Shalal* but not here.

Crusader also cites the legislative history of Insurance Code section 1763. The Legislature clearly was concerned about the danger faced by California

---

[5]Moreover, Justice Kaufman, the author of *Middlesex* as a Court of Appeal justice in 1981, concurred in *Moradi-Shalal* as a Supreme Court justice in 1988.

consumers dealing with unstable and underfunded nonadmitted insurers.[6] Much of the legislative history deals with tales of carriers headquartered in the Caribbean or similar offshore locales, backed by unreliable assets such as bonds of dubious value issued by third world governments or enterprises of questionable stability. Nevertheless, there is no indication that the Legislature intended to create a private right to sue when it enacted Insurance Code section 1763. Testimony was presented to the Legislature by at least one witness recommending that private parties be given a right to sue, yet the Legislature enacted no such right. Rather than creating a private right to sue, the Legislature instead increased regulatory procedures and created a "surplus line advisory organization."[7] Insurance Code section 1780.50, subdivision (a), which creates the "surplus line advisory organization," states "[t]he Legislature finds and declares that consumers in the State of California have insurance needs which cannot always be met through the admitted insurance market. For this reason, many insurance consumers need access to insurance underwritten by nonadmitted insurers, as permitted by law . . . ." Thus in response to claims of regulatory noncompliance in the surplus line area, the Legislature created not a private right to sue, but instead expressly recognized the value of the surplus line market, created new regulatory procedures, and created a "surplus line advisory organization . . . to perform certain duties delegated by the Insurance Commissioner. . . ." (Ins. Code § 1780.50, subd. (a)). Nothing in the legislative history suggests a legislative intent to create a private right to sue; instead the legislative history suggests that the Legislature purposefully refrained from creating such a right. (Cf., e.g., Gov. Code, § 91004; Civ. Code, § 52; Health & Saf. Code, § 1430, subds. (a) and (b) [each expressly creating a private right to sue].)

Crusader also cites cases that have allowed a private suit based on a statute, even though the statute itself did not expressly provide a civil remedy. (See, e.g., *Castillo* v. *Friedman, supra,* 197 Cal.App.3d Supp. 6 [citing *Middlesex,* rent stabilization ordinance found to create a private right of action]; *Czap* v. *Credit Bureau of Santa Clara Valley* (1970) 7 Cal.App.3d 1 [86 Cal.Rptr. 417] [collection agency's garnishment of exempt wages supports private civil action for abuse of process]; *Laczko* v. *Jules Meyers, Inc.* (1969) 276 Cal.App.2d 293 [80 Cal.Rptr. 798] [tort cause of action available for setting back odometer].) Each of these cases was decided before *Moradi-Shalal. Castillo,* discussed above, concerned a case of common law fraud that was also a violation of a rent control ordinance. *Czap*

---

[6]There is no allegation, and we do not imply, that the insurer defendants involved here are in the underfunded and unstable category. Rather, insofar as this record suggests, they appear simply to be legitimate companies regulated by other states, but not admitted in California.

[7]According to the legislative history, one reason for formation of the "surplus line advisory organization" was that industry organizations which previously had been voluntarily advising and providing information to the Insurance Commissioner had ceased these activities for fear of being sued.

involved an abuse of process committed by garnishing exempt wages. *Laczko* involved a suit against the perpetrator of a criminal fraud. Neither *Czap* nor *Laczko* involved a comprehensive regulatory scheme of the type involved in the instant case. (See also *Arriaga* v. *Loma Linda University*, *supra*, 10 Cal.App.4th 1556, 1564 [Restatement standards for determining whether statute creates a private right to sue have arguably been superseded by *Moradi-Shalal;* even if *Middlesex* survived *Moradi-Shalal*, no private right of action where there is a comprehensive regulatory scheme to address a problem and the statute does not provide for a private right of action].)

Finally, Crusader argues that the courts themselves should create a private right of action on the theory that there is a policy preference for admitted carriers over nonadmitted carriers, and that California insureds might be better protected by admitted insurers who contribute to the California Insurance Guarantee Association (an organization which provides compensation following a financial failure of an admitted insurer). This argument is a reiteration of Crusader's argument for application of the broad policymaking approach of the Restatement Second of Torts section 874A, an approach which has never been applied by the California Supreme Court. Moreover, similar arguments could be made regarding the public policy considerations implicated in *Moradi-Shalal*. Those injured by California insureds benefit from carriers' compliance with Insurance Code section 790.03. Nevertheless, the Supreme Court held in *Moradi-Shalal* that the courts cannot create a private right of action to enforce compliance with that statute, precisely because many competing policy considerations are implicated, and because those considerations should be weighed and addressed by the Legislature. Thus the trial court was correct to sustain the demurrers to Crusader's claim that defendants violated Insurance Code section 1763.

5.-7.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

8. *Crusader's Complaint Presents Issues Properly Directed to the Department of Insurance or to the Legislature.*

This matter comes to us after a demurrer was sustained; the record was not developed to the point of evidence. We therefore intend no comment upon the factual merit of Crusader's claims. Crusader's contentions, however, can be summarized as this: Crusader contends that the Department of Insurance

---

*See footnote, *ante*, page 121.

is not adequately performing its legislatively assigned task of regulating surplus line brokers and, indirectly, non-admitted insurers. Yet Crusader seeks not a writ of mandate directing the department to perform a duty mandated by the Legislature, but rather seeks court-created regulation of surplus line brokers as well as nonadmitted insurers through the medium of damage awards, injunctions and "restitution" orders.

The question of what type or level of regulation is adequate or appropriate is uniquely a question for executive or legislative policy choice. The question implicates issues of cost and price, product availability, allocation of economic burdens and benefits, optimum utilization of tax money, consistency of regulatory effect, suitability of court-imposed resolutions, and a myriad of similar concerns. The subject of creation of a private right to sue necessarily raises similar policy issues, issues uniquely within the policy-investigating and policy-setting powers of the executive and legislative branches.

Crusader's complaints are therefore properly directed either to the Department of Insurance or to the Legislature. If the Department of Insurance is without the resources to address this area of responsibility with the level of vigor the department finds appropriate, the department can report its inabilities to the Legislature. If the Legislature finds it appropriate, either in response to advice from the department or independently, the Legislature can direct reallocation of resources to this effort. Should the Legislature find ancillary enforcement through private litigation preferable to reliance on department enforcement alone, the Legislature can supplement the department's regulatory attentions by providing a private right to sue. Such a legislatively created private right to sue could be limited to injunctive or restitutive remedies, could extend to suits for large amounts of money damages such as the one filed by Crusader here, or could be otherwise tailored as the Legislature finds advisable. Crusader itself can petition the Legislature to create a private right of action for enforcement of Insurance Code section 1763.

Institutional systems are therefore in place to deal with the problem Crusader raises. There is no need or justification for the courts to interfere with the Legislature's efforts to mold and implement public policy in this area by extrapolating the Legislature's enactments into areas beyond those specified by the Legislature itself. (See *California Fed. Savings & Loan Assn.* v. *City of Los Angeles, supra,* 11 Cal.4th 342, 349 [task of a court is to construe, not to amend, a statute].)

## DISPOSITION

The judgment of dismissal is affirmed. Appellant is to bear costs on appeal.

Boren, P. J., and Nott, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 9, 1997.